# Exhibit L – Title Documents

## Calcasieu Parish Recording Page

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**Received From :**
ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

**First VENDOR**
SAI LOUISIANA LLC

**First VENDEE**
PARK CAPITAL ACQ LLC

---

**Index Type :**    CONVEYANCES                    **File Number :** 3454971

**Type of Document :** DEED
                                               **Book :** 4484        **Page :** 709

**Recording Pages :**        10

**Recorded Information**

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Calcasieu Parish, Louisiana.

**On (Recorded Date) :** 01/06/2022

**At (Recorded Time) :** 10:28:01AM

Deputy Clerk

Doc ID - 034287470010

**Return To :**    ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

Do not Detach this Recording Page from Original Document

**STATE OF LOUISIANA**

**PARISH OF CALCASIEU**

### CASH SALE

BE IT KNOWN, that on the dates and at the places and before the undersigned Notaries Public, duly commissioned and qualified in and for their respective jurisdictions as hereinafter set forth, and in the presence of the subscribing witnesses, personally appeared:

SAI LOUISIANA, LLC (EIN: XX-XXX7723), a Louisiana limited liability company, herein represented by its duly authorized representative, and having a mailing address of 2215 Longue Vue Dr., Lake Charles, LA 70605 ("**Seller**"); AND

PARK CAPITAL ACQ, LLC (EIN: XX-XXX 9686____), a Louisiana limited liability company, herein represented by its duly authorized representative, and having a mailing address of 426 Herbertsville Rd., Floor 3, Brick, NJ 08724 ("**Buyer**");

who did declare as follows, to-wit:

Seller does by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver unto Buyer, with full warranty and with full substitution and subrogation in and to all the rights and actions of warranty which Seller has or may have against all preceding owners and vendors, the immovable property located in Calcasieu Parish, Louisiana, and described on Exhibit "A" attached hereto together with all buildings, improvements, component parts and fixtures attached to the above described property. Seller does further grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver unto Buyer, without warranty of title but with full substitution and subrogation in and to all the rights and actions of warranty which Seller has or may have against all preceding owners and vendors, all of its right, title and interest in and to (i) all rights, (except the hotel experienced hurricane damage in fall 2020 and Seller retains all rights to all insurance proceeds arising therefrom), servitudes, appurtenances, covenants, licenses, privileges, benefits and advantages thereunto; and (ii) any land lying in the bed or banks of any lakes, rivers, streams, waterways, ditches, roads, streets, lanes, alleys, or rights of ways either within the property or bounding such property to the centerline thereof (all interests and property described above being collectively referred to herein as the "**Property**").

Buyer hereby accepts and purchases the Property for itself and its successors and assigns and acknowledges due delivery and possession of the Property, to have and to hold said Property unto the Buyer and its successors and assigns forever.

This Cash Sale is made and accepted for and in consideration of the aggregate price and sum of **NINE MILLION AND 00/100 DOLLARS ($9,000,000.00)**, the receipt and sufficiency of which is hereby acknowledged.

Seller and Buyer hereby acknowledge and recognize that the property being sold and purchased is to be transferred in an "AS IS" condition, and Buyer does hereby waive, relieve and release Seller from any claims or causes of action for redhibition pursuant to Louisiana Civil Code Article 2520, et seq. and article 2541, et seq. or for reduction of purchase price pursuant to Louisiana Civil Code Article 2541, et seq. Additionally, Buyer acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code article 2524.

This Cash Sale is also specifically made subject to all matters set forth on Exhibit "B" attached hereto (the "**Permitted Exceptions**"). Reference to such Permitted Exceptions is for informational purposes only and shall not constitute an interruption of prescription with respect to any such Permitted Exception or an acknowledgement that any such Permitted Exception

1

continues to affect or has ever affected the Property.

All state, city and parish taxes assessed against the Property up to and including such taxes due and eligible for the year 2020 have been paid by Seller and such taxes for 2021 have been prorated between Buyer and Seller. Buyer shall have the obligation to pay the 2021 taxes and all subsequent taxes when due and payable. Buyer shall be responsible for providing the tax assessor of Calcasieu Parish with the address to which property tax and assessment notices are to be mailed. As of the date of this Cash Sale, such notices shall be sent to Buyer at the address listed above.

This instrument may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement. The signatures of any party to a counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.

**THUS DONE AND SIGNED** in Lake Charles, Louisiana, on this 4th day of January, 2022, in the presence of me, Notary Public, and the following competent witnesses who have signed in the presence of said party and me, Notary Public.

WITNESSES:

SAI LOUISIANA, LLC

Print: _Morgan McManus_

By: Ishan Patel
Title: Manager of SAI Louisiana, LLC

Print: _Casey L. Futch_

Notary Name: Thomas J Gayle
Notary/Bar ID: 20824
Expiration: death

2

**THUS DONE AND SIGNED** in ___Ocean  NJ___
on this ___4__ day of __January__, 20__25__, in the presence of me, Notary Public, and the
following competent witnesses who have signed in the presence of said party and me, Notary Public.

WITNESSES:                                    PARK CAPITAL ACQ, LLC

_____mm Leu_____

Print: __Michele Scher__             By: __A Bodeh__
                                      Title: _____

_____mm_____

Print: __Maya Nesser__

                    Notary Name: _____
                    Notary/Bar ID: _____
                    Expiration: _____

                                      Goldie M Sandrovitz
                                      NOTARY PUBLIC
                                      State of New Jersey
                                      ID # 50090701
                                      My Commission Expires 9/20/2023

3

## EXHIBIT "A"

### Legal Description of Land

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

Ex. "A"

## EXHIBIT "B"

### PERMITTED EXCEPTIONS

Buyer accepts the Property subject to the following matters:

(i)     Ad valorem real estate taxes due for 2022 and subsequent years.

(ii)    Title to the coal, oil, gas and other minerals underlying the surface of the land insured hereunder and all rights and easements in favor of the holder of the coal, oil, gas and mineral estate or by any party claiming by, through or under said holder.

(iii) Deed restrictions recorded under Registry No. 1748362 in Conveyance Book 1740, Page 614, aforesaid records.

Ex. "B"

**STATE OF LOUISIANA**

**PARISH OF CALCASIEU**

## CERTIFICATE OF AUTHORITY
## TO ACT FOR
## SAI LOUISIANA, LLC

BEFORE ME, the undersigned Notary Public, personally came and appeared ISHAN RASHMIKANT PATEL, who, after being duly sworn, did declare as follows:

SAI LOUISIANA, LLC is a Louisiana Limited Liability Company which was organized by ISHAN RASHMIKANT PATEL, the Articles of Organization being dated November 5, 2015 and being filed of record with the Louisiana Secretary of State, Louisiana Charter Number: 42064588K. Said Articles of Organization were amended on or about September 25, 2018 and filed of record in the records of Calcasieu Parish under Clerk's file No. 3154761 .

ISHAN RASHMIKANT PATEL is the designated Manager of SAI LOUISIANA, LLC as per the above referenced Articles of Organization and he does certify that ISHAN RASHMIKANT PATEL having the consent of all of the managers of said company, is authorized to act for and in the name of the said SAI LOUISIANA, LLC to conduct all business of the Limited Liability Company including but not limited to the purchase, sell, and mortgage of real estate on such conditions as they in their own discretion deem proper.

AND NOW, pursuant to *LSA-R.S. 12:1317 (C)*, ISHAN RASHMIKANT PATEL does certify that he is the member/manager of SAI LOUISIANA, LLC and he has full authority to sign documents for and in the name of SAI LOUISIANA, LLC which authority includes but is not limited to the power of purchase, convey, sell, alienate, assign real estate leases, mortgage, execute Deeds of Trust, encumber and/or transfer any and all movable or immovable (and real and personal) property of SAI LOUISIANA, LLC upon such terms and conditions as they deem best. Said sale specifically includes the property described on Exhibit A attached hereto.

AND NOW, in furtherance of said authority, he does certify that ISHAN RASHMIKANT PATEL, Manager, acting individually for the Company has the power and authority to sign contracts, including agreements to purchase and sell, mortgages, leases, listing agreements, commission agreements and other general contracts upon such terms and conditions as they, individually, deem best, without the authority or concurrence of the other.

THUS DONE AND SIGNED in Lake Charles, Louisiana this 4th day of January, 2022.

WITNESSES:                          SAI LOUISIANA, LLC

M. mcmurn
Printed Name: *Morgan Mcmanus*      **ISHAN RASHMIKANT PATEL,**
                                    Member/Manager

Printed Name: Casey L. Futch

                          NOTARY PUBLIC

## EXHIBIT "A"

### Legal Description of Property

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

## EXTRACT OF MINUTES
### PARK CAPITAL ACQ, LLC

BE IT RESOLVED, that the sole Members and Manager of PARK CAPITAL ACQ, LLC, a Delaware limited liability company (the "Company") acting in such capacity, hereby adopt the following, to-wit:

WHEREAS, the Company would like to purchase certain immovable property more particularly described on Exhibit "A" attached hereto (the "Property");

BE IT RESOLVED that Abraham Bodek, Manager (the "Authorized Representative"), in the name of and on behalf of the Company, is authorized and empowered to purchase, buy, and acquire the Property upon such terms and conditions as the Authorized Representative may deem fit and proper;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized and empowered for and on behalf of and in the name of the Company to do all of the following relating to the Property, to-wit: (i) to negotiate for a loan or loans with any financial institutions and to borrow such sums of money to be repaid at such times and to bear such interest as the Authorized Representative may, in his/her sole discretion, deem fit and proper; (ii) to make, sign and execute negotiable promissory notes, and any other obligations, in the name of the Company; (iii) to mortgage and/or otherwise encumber any and all of the Property to secure any loan or loans, and/or any and all other obligations of the Company with such acts of mortgage to include any terms and conditions deemed appropriate in the sole discretion of the Authorized Representative (including but not limited to all of the usual and customary clauses contained in mortgage and/or security instruments in Louisiana, including a confession of judgment, consent to executory process, waiver of appraisement, and the pact de non alienando); and (iv) to file or allow the filing of UCC-1s and other UCC Financing Statements related thereto and to do any other acts and sign any and all documents and instruments as the Authorized Representative may deem necessary or appropriate in order to carry out the purposes of these resolutions, including execution of title insurance seller/owner affidavits, and closing/settlement statements;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized in the name of and on behalf of the Company to take such further actions and to do all things that may appear in his/her discretion to be necessary, advisable or appropriate to give effect to the intent of these resolutions and to accomplish the transactions contemplated by these resolutions; and

BE IT FURTHER RESOLVED that all actions heretofore taken by or at the discretion of Authorized Representative in connection with the transactions that are the subject of these resolutions shall be, and hereby are, approved, ratified and confirmed as the acts of the Company without any further action by the Company.

*******************
### CERTIFICATE

I, the undersigned, Member, Manager and certifying official of PARK CAPITAL ACQ, LLC (the "Company"), hereby certify that (i) the foregoing resolutions were adopted by the unanimous consent of the Members and Manager of the Company, (ii) the foregoing resolutions are legally effective to bind the Company and are not in conflict with the Articles of Organization or any operating agreements; and (iii) the above resolutions remain in full force and effect.

THUS DONE AND SIGNED on this ___3 day of January, 2022, in _____ NJ

PARK CAPITAL ACQ, LLC

Abraham Bodek
Member/Manager/Certifying Official

Goldie M Senderovits
NOTARY PUBLIC
State of New Jersey
ID # 50090701
My Commission Expires 9/20/2023

NOTARY PUBLIC

## EXHIBIT "A"

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

File Number: 3454972    Page 1 of 21

## Calcasieu Parish Recording Page

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**Received From :**
ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

**First MORTGAGOR**
PARK CAPITAL ACQ LLC

**First MORTGAGEE**
CELTIC BANK CORPORATION

Index Type : MORTGAGES                    File Number : 3454972

Type of Document : COLLATERAL MORTGAGE

Recording Pages :        21          Book : 5855        Page : 592

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Calcasieu Parish, Louisiana.

On (Recorded Date) : 01/06/2022

At (Recorded Time) : 10:28:53AM

Doc ID - 034287480021

_Deputy Clerk_

*B)* *\* Pledge of Leases &*
*Rents at 3454973*
*\* UCC at 3455883*

**Return To :** ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

Do not Detach this Recording Page from Original Document



## COLLATERAL MORTGAGE

| | | |
|---|---|---|
| **Mortgagor:** | PARK CAPITAL ACQ LLC<br>401 N Lakeshore Drive<br>Lake Charles, LA 70601 | **Mortgagee:** Celtic Bank Corporation<br>268 S. State Street<br>Suite 300<br>Salt Lake City, UT 84111 |

**COLLATERAL MORTGAGE**

BY: PARK CAPITAL ACQ LLC

IN FAVOR OF:

    Celtic Bank Corporation

    And Any Future Holder or Holders

UNITED STATES OF AMERICA

STATE    OF LOUISIANA

PARISH    OF CALCASIEU

BE IT KNOWN, that on December 30, 2021;

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses;

PERSONALLY CAME AND APPEARED:

    PARK CAPITAL ACQ LLC, a limited liability company duly organized, validly existing and in good standing under the laws of the State of Louisiana and has its registered offices at 401 N Lakeshore Drive, Lake Charles, LA, 70601, appearing herein through its duly authorized member(s);

WHO DECLARED THAT:

### TERMS AND CONDITIONS:

**INDEBTEDNESS.** The word "indebtedness" as used in this Mortgage means individually, collectively and interchangeably any and all present and future loans, advances, and/or other extensions of credit obtained and/or to be obtained by Mortgagor from Mortgagee, as well as Mortgagee's successors and assigns, from time to time, one or more times, now and in the future, under a certain commercial loan agreement dated December 30, 2021 and any and all promissory notes evidencing such present and/or future loans, advances, and/or other extensions of credit,

15018462 & 15018463

including without limitation, promissory notes dated December 30, 2021, in the principal amount of $5,000,000.00 (15018462) & $1,765,000.00 (15018463), from Mortgagor to Mortgagee, and any and all amendments thereto and/or substitutions therefor, and any and all renewals, extensions and refinancings thereof, as well as any and all other obligations and liabilities that Mortgagor may now and/or in the future owe to and/or incur in favor of Mortgagee, as well as Mortgagee's successors or assigns, whether direct or indirect, or by way of assignment or purchase of a participation interest, and whether related or unrelated, or whether committed or purely discretionary, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, due or to become due, and whether now existing or hereafter arising, of every nature and kind whatsoever.

**COLLATERAL MORTGAGE NOTE.** Desiring to secure the prompt and punctual payment and satisfaction of any and all present and future indebtedness in favor of Mortgagee, as defined above, Mortgagor executed a certain **Collateral Mortgage Note** dated **December 30, 2021**, in the **principal amount of U.S. $6,765,000.00**, payable to the order of BEARER, on demand, at the offices of Mortgagee, which Note stipulates to bear interest at the rate of Wall Street Journal Prime plus 2.25 percent per annum from date until paid and is paraphed "Ne Varietur" for identification with this Mortgage by the Notary Public before whom this Mortgage is passed, a copy of which Note is attached hereto as an exhibit and is expressly made a part hereof by reference.

**COLLATERAL MORTGAGE NOTE TO SECURE INDEBTEDNESS.** The aforesaid Note, after having been paraphed "Ne Varietur" for identification with this Mortgage by the Notary before whom this Mortgage was passed, was delivered to Mortgagor, who hereby acknowledges receipt thereof. Mortgagor declared that a security interest in said Note has been and/or will be granted to Mortgagee as the initial Mortgagee under this Mortgage for the purpose of securing any and all present and future indebtedness that Mortgagor may obtain or incur, from time to time, one or more times, from Mortgagee and any subsequent holder or holders of said Note as heretofore stated.

**GRANTING OF MORTGAGE.** And now, in order to secure the prompt and punctual payment and satisfaction of the aforesaid Note, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and additionally to secure repayment of any and all Additional Advances that Mortgagee may make on behalf of Mortgagor as provided in this Mortgage, together with interest thereon, Mortgagor does by these presents specifically mortgage, affect and hypothecate unto and in favor of Mortgagee, any and all of Mortgagor's present and future rights, title and interest in and to the following described Property located in Calcasieu Parish, State of Louisiana:

The immovable (real) property specifically described as follows:

See **Exhibit A , which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

Together with any and all present and future buildings, constructions, component parts, improvements, attachments, appurtenances, fixtures, rights, ways, privileges, advantages, batture, and batture rights, servitudes and easements of every type and description, now and/or in the future relating to the Property, and any and all items and fixtures attached to and/or forming integral or component parts of the Property in accordance with the Louisiana Civil Code.

The Property or its address is commonly known as   401 N Lakeshore Drive, Lake Charles, LA 70601.

**MORTGAGE SECURING FUTURE NOTE.** The aforesaid Note and this Mortgage have been executed by Mortgagor for the purpose of securing Mortgagor's Note that may now be existing or that may arise in the future as provided herein, with the preferences and priorities provided under applicable Louisiana law. However, nothing under this Mortgage shall be construed as limiting the duration of this Mortgage or the purpose or purposes for which Mortgagor's Note may be requested or extended.

**DURATION OF MORTGAGE.** Mortgagor agrees that the Property is to remain mortgaged to

15018462 & 15018463

Mortgagee until Mortgagor's Note is returned to Mortgagor by Mortgagee marked "PAID" or "CANCELLED, or until Mortgagor marks the Note "PAID" or "CANCELLED" after it is returned to Mortgagor.

**PROHIBITIONS REGARDING PROPERTY.** So long as this Mortgage remains in effect, Mortgagor shall not, without the prior written consent of Mortgagee, sell, transfer, forego, assign, do anything or permit anything to be done that may in any way affect Mortgagee's security interests and rights in and to the mortgaged Property, or create or permit to exist any Encumbrance in or against any of the Property, in favor of any person other than Mortgagee.

**REPRESENTATIONS AND WARRANTIES CONCERNING THE PROPERTY.** Except as previously disclosed to Mortgagee in writing, Mortgagor represents and warrants that: (A) Mortgagor is and will continue to be the lawful owner of the Property; (B) Mortgagor has the right to mortgage the Property to Mortgagee; (C) as of the time this Mortgage is recorded, there are no Encumbrances affecting the Property; (D) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, liens, or claims of, or in favor of, any person, firm, corporation, or other entity; and (E) this Mortgage is binding upon Mortgagor as well as Mortgagor's heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is cancelled in the manner provided above.

**INSURANCE PROVISIONS.** The following insurance provisions are a part of this Mortgage:

**Required Insurance.** So long as this Mortgage remains in effect, Mortgagor shall, at its sole cost, keep and/or cause others, at their expense, to keep the Property constantly insured against loss by fire, by hazards included within the term "extended coverage," and by such other hazards (including flood insurance, where applicable) as may be required by Mortgagee. Such insurance shall be in an amount not less than the full replacement value of the Property, or such other amount or amounts as Mortgagee may require or approve in writing. Mortgagor shall further provide and maintain, at its sole cost and expense, comprehensive public liability insurance, naming both Mortgagor and Mortgagee as parties insured, protecting against claims for bodily injury, death and/or property damage arising out of the use, ownership, occupancy, possession, operation and condition of the Property, and further containing a broad form contractual liability endorsement covering Mortgagor's obligations to indemnify Mortgagee as provided hereunder. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Mortgagor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Mortgagee that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Mortgagee, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program or, if permitted by the Small Business Administration, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Mortgagee in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Insurance Companies and Policies.** Mortgagor may purchase such insurance from any insurance company or broker that is acceptable to Mortgagee, provided that such approval may not be unreasonably withheld. All such insurance policies, including renewals and replacements, must also be in form and substance acceptable to Mortgagee, and must additionally contain a lender's loss payee endorsement in favor of Mortgagee, providing in part that (1) all proceeds and returned premiums under such policies of insurance will be paid directly to Mortgagee, and (2) no act or omission on the part of Mortgagor, or any of its

15018462 & 15018463

directors, officers, agents, employees or representatives, nor breach of any warranty contained in such policies, shall affect the obligations of the insurer to pay the full amount of any loss to Mortgagee. Such policies of insurance must also contain a provision prohibiting cancellation, nonrenewal, or the alteration of such insurance without at least ten (10) days prior written notice to Mortgagee of such intended cancellation or alteration. Mortgagor agrees to provide Mortgagee with originals or certified copies of such policies of insurance. Mortgagor further agrees to promptly furnish Mortgagee with copies of all renewal notices and, if requested by Mortgagee, with copies of receipts for paid premiums. Mortgagor shall provide Mortgagee with originals or certified copies of all renewal or replacement policies of insurance no later than fifteen (15) days before any such existing policy or policies should expire. If Mortgagor's insurance policies and renewals are held by another person, Mortgagor agrees to supply original or certified copies of the same to Mortgagee within the time periods required above.

**Property Losses and Claims.** Mortgagor agrees to immediately notify Mortgagee in writing of any material casualty to or accident involving the Property, whether or not such casualty or loss is covered by insurance. Mortgagor further agrees to promptly notify Mortgagor's insurance company and to submit an appropriate claim and proof of claim to the insurance company in the event that any of the Property is lost, damaged, or destroyed as a result of an insured hazard. Mortgagee may submit such a claim and proof of claim to the insurance company on Mortgagor's behalf, should Mortgagor fail to do so promptly for any reason. Mortgagor hereby irrevocably appoints Mortgagee as its agent and attorney-in-fact, such agency being coupled with an interest, to make, settle and adjust claims under such policy or policies of insurance and to endorse the name of Mortgagor on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more Events of Default exist under this Mortgage, Mortgagee will not settle or adjust any such claim without the prior approval of Mortgagor (which approval shall not be unreasonably withheld).

**Insurance Proceeds.** Mortgagee shall have the right to directly receive the proceeds of all insurance protecting the Property. In the event that Mortgagor should receive any such insurance proceeds, Mortgagor agrees to immediately turn over and to pay such proceeds directly to Mortgagee. All insurance proceeds may be applied, at Mortgagee's sole option and discretion, and in such a manner as Mortgagee may determine (after payment of all reasonable costs, expenses and attorney's fees necessarily paid or fees necessarily paid or incurred by Mortgagee in this connection), for the purpose of: (1) repairing or restoring the lost, damaged or destroyed Property; or (2) reducing the then outstanding balance of the Indebtedness and any Additional Advances that Mortgagee may have made on Mortgagor's behalf, together with interest thereon. Mortgagee's receipt of such insurance proceeds and the application of such proceeds as provided herein shall not, however, affect the lien of this Mortgage. Nothing under this section shall be deemed to excuse Mortgagor from its obligations to promptly repair, replace or restore any lost or damaged Property, whether or not the same may be covered by insurance, and whether or not such proceeds of insurance are available, and whether such proceeds are sufficient in amount to complete such repair, replacement or restoration to the satisfaction of Mortgagee. Furthermore, unless otherwise confirmed by Mortgagee in writing, the application or release of any insurance proceeds by Mortgagee shall not be deemed to cure or waive any Event of Default under this Mortgage.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Mortgagor shall promptly pay or cause to be paid when due, all taxes, local and special assessments, and governmental and other charges, as well as all public and/or private utility charges, of every type and description, that may from time to time be imposed, assessed and levied against the mortgaged Property or against Mortgagor.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Mortgagor agrees that Mortgagor's possession and use of the Property shall be governed by the following provisions:

15018462 & 15018463

**Use of Property.** Mortgagor shall not use the Property and shall not permit others to use the Property, for any purpose or purposes other than those previously disclosed to Mortgagee in writing, and in no event shall any of the Property be used in any manner that would damage, depreciate, or diminish its value, or that may result in a cancellation or termination of insurance coverage. Mortgagor additionally agrees not to do or to suffer to be done anything which may increase the risk of fire or other hazard to the Property or any part or parts thereof. Mortgagor shall not permit the Property, or any portion thereof, to be used by the public and others as may make possible a claim or claims of adverse usage, easement, servitude, right of way or habitation, or adverse possession by the public and others, or any implied, tacit or other dedication of the Property.

**Compliance with Applicable Laws and Regulations.** Mortgagor shall observe and abide by, and shall cause others to observe and abide by, all present and future laws, ordinances, orders, rules, regulations, restrictions, and requirements of all federal, state and municipal governments, courts, departments, commissions, boards, agencies, and officers, affecting the Property and its use.

Mortgagor shall further promptly perform and observe, and shall cause others to promptly perform and observe, all the terms, covenants and conditions of any requirements, instruments and agreements affecting the Property, non-compliance with which may adversely effect the priority of this Mortgage, or which may impose any duty or obligation upon Mortgagor, or upon any lessee or other occupant of the Property. Mortgagor shall further do and cause to be done all things necessary to preserve intact and unimpaired any and all easements, servitudes, appurtenances and other interests and rights in favor of, or constituting any portion of, the Property.

**Compliance With Environmental Laws.** Mortgagor represents and warrants to Mortgagee that: (1) During the period of Mortgagor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Mortgagor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Mortgagee in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Mortgagee in writing, (a) neither Mortgagor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Mortgagor authorizes Mortgagee and its agents to enter upon the Property to make such inspections and tests, at Mortgagor's expense, as Mortgagee may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Mortgagee shall be for Mortgagee's purposes only and shall not be construed to create any responsibility or liability on the part of Mortgagee to Mortgagor or to any other person. The representations and warranties contained herein are based on Mortgagor's due diligence in investigating the Property for Hazardous Substances. Mortgagor hereby (1) releases and waives any future claims against Mortgagee for indemnity or contribution in the event Mortgagor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Mortgagee against any and all claims, losses, liabilities, damages, penalties, and expenses which Mortgagee may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Mortgagor's ownership or interest in the Property, whether or not the same was or should have been known to Mortgagor. The

15018462 & 15018463

provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Mortgagee's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**ERISA.** Mortgagor represents and warrants to Lender that the granting of this Mortgage and the consummation of any loan or loans or other transactions contemplated or secured hereby will not violate the provisions of, and will not constitute a prohibited transaction under the ERISA.

**Alterations.** Mortgagor shall not, without the prior written consent of Mortgagee, demolish, remove, construct, restore, add to or alter any building(s) or other Improvements to or upon the Property, or any part or parts thereof, or consent to, or permit any such demolition, removal, construction, restoration, addition or alteration. Mortgagor shall further not, without the prior written consent of Mortgagee, remove or permit the removal of any present or future fixtures and other property forming part of the Property. Mortgagee may condition its consent to permit Mortgagor to demolish or to remove such improvements, fixtures and/or other property upon Mortgagor's agreement to replace the same with new improvements and/or fixtures of at least equal value then satisfactory to Mortgagee.

**Abandonment of Property.** Mortgagor shall not, nor shall Mortgagor permit others to abandon, commit waste, or destroy the Property, or any part or parts thereof.

**Repairs and Maintenance.** Mortgagor shall keep and maintain, and/or cause others to keep and maintain, the Property and the sidewalks and curbs adjoining the Property, in good order, repair and condition. Mortgagor shall further make and/or cause all necessary repairs to be made to the Property (including the repair and restoration of any portion of the Property that may have been damaged, lost or destroyed).

**ENCUMBRANCES.** The following provisions relating to Encumbrances on the Property are a part of this Mortgage:

**Prior Encumbrances.** To the extent applicable, Mortgagor shall fully and timely perform any and all of Mortgagor's obligations under any prior Encumbrances affecting the Property. Without limiting the foregoing, Mortgagor shall not commit or permit to exist any breach of or default under any such prior Encumbrances. Mortgagor shall further promptly notify Mortgagee in writing upon the occurrence of any event or circumstances that would, or that might, result in a breach of or default under any such prior Encumbrance. Mortgagor shall further not modify or extend any of the terms of any prior Encumbrance or any indebtedness secured thereby, or request or obtain any additional loans or other extensions of credit from any third party creditor or creditors whenever such additional loan advances or other extensions of credit may be directly or indirectly secured, whether by cross-collateralization or otherwise, by the Property, or any part or parts thereof, with possible preference and priority over the lien of this Mortgage.

**Future Encumbrances.** Mortgagor shall not, without the prior written consent of Mortgagee, grant any Encumbrance that may affect the mortgaged Property, or any part or parts thereof, nor shall Mortgagor permit or consent to any Encumbrance attaching to or being filed against any of the mortgaged Property in favor of anyone other than Mortgagee. Mortgagor shall further promptly pay when due all statements and charges of mechanics, materialmen, laborers and others incurred in connection with the alteration, improvement, repair and maintenance of the mortgaged Property, or otherwise furnish appropriate security or bond, so that no future Encumbrance may ever attach to or be filed against the Property or any of Mortgagor's Rights.

**Notice of Encumbrances.** Mortgagor shall immediately notify Mortgagee in writing upon the filing of any attachment, lien, judicial process, claim, or other Encumbrance. Mortgagor additionally agrees to notify Mortgagee immediately in writing upon the occurrence of any default, or event that with the passage of time, failure to cure, or giving of notice, might result in a default under any of Mortgagor's obligations that may be secured by any presently existing or future Encumbrance, or that might result in an Encumbrance affecting the mortgaged Property, or

15018462 & 15018463

should any of the mortgaged Property be seized or attached or levied upon, or threatened by seizure or attachment or levy, by any person other than Mortgagee.

**ADDITIONAL ADVANCES FOR SPECIFIC PURPOSES.** Mortgagee shall have the right, within Mortgagee's sole option and discretion, to make Additional Advances on Mortgagor's behalf for the following purposes:

**Insurance.** If Mortgagor should for any reason fail to maintain insurance on the Property as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of purchasing and maintaining, and Mortgagee may purchase and maintain such insurance coverage (including insurance protecting only Mortgagee's interests in the Property).

**Taxes.** If Mortgagor should for any reason fail to promptly pay when due taxes, assessments and governmental and other charges as required under this Mortgage, Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of paying, and Mortgagee may pay, such taxes, assessments and governmental and other charges.

**Repairs.** If Mortgagor should for any reason fail to make all necessary repairs to the Property and to keep the Property in good working order and condition as required under this Mortgage, Mortgagor agrees that Mortgagee may make Additional Advances on Mortgagor's behalf for the purpose of making, and Mortgagee may make, such repairs and maintenance to the Property as Mortgagee may deem to be necessary and proper within its sole discretion.

**Encumbrances.** If Mortgagor should permit or allow any Encumbrance to attach to or be recorded or filed against the Property, without having first obtained Mortgagee's prior written consent, or if Mortgagor should for any reason default under any obligation secured by any presently existing or future Encumbrance, Mortgagee may make Additional Advances on Mortgagor's behalf and take such other action or actions as Mortgagee may deem to be necessary and proper, within Mortgagee's sole discretion, to pay and fully satisfy such obligation and/or Encumbrance, to cure or rectify any such default or defaults, and to prevent the occurrence of any future defaults.

**Other.** Mortgagee may further make Additional Advances on Mortgagor's behalf and take such other action or actions as Mortgagee may deem to be necessary and proper, within Mortgagee's sole discretion, to cure and rectify any actions or inactions on Mortgagor's part, as are required under this Mortgage, that are not listed immediately above.

**No Obligations.** Nothing under this Mortgage shall obligate Lender to make any such Additional Advances or to take any of the above actions on Grantor's behalf, or as making Lender in any way responsible or liable for any loss, damage or injury to Grantor, or to any other person or persons, resulting from Lender's election not to advance such additional sums or to take such action or actions. In addition, Lender's election to make Additional Advances and/or to take the above actions on Grantor's behalf shall not constitute a waiver or forbearance by Lender of any Event of Default under this Mortgage.

**OBLIGATION TO REPAY ADDITIONAL ADVANCES; INTEREST.** Mortgagor unconditionally agrees to repay any and all Additional Advances that Mortgagee may elect to make on Mortgagor's behalf, together with interest as provided herein, immediately upon demand by Mortgagee. Mortgagor further agrees to pay Mortgagee interest on the amount of such Additional Advances at the Note rate from the date of each such Advance or at the legal rate of interest provided under applicable law, whichever is greater, until all such Advances are repaid in full. Mortgagor's obligations to repay Additional Advances to Mortgagee, together with interest thereon, shall be secured by this Mortgage up to a maximum of two (2) times the face amount of the aforesaid Note.

**COLLATERAL ASSIGNMENT AND PLEDGE OF RIGHTS AS ADDITIONAL SECURITY.** As additional collateral security for the prompt and punctual payment and satisfaction of any and all present and future Indebtedness in favor of Mortgagee as may be outstanding from time to time, at any one or more times, and all Additional Advances that Mortgagee may make on Mortgagor's behalf

15018462 & 15018463

pursuant to this Mortgage, together with interest thereon as provided herein up to a maximum principal amount outstanding at any one or more times, from time to time, not to exceed U.S. $50,000,000.00, together with interest, costs, expenses, attorneys' fees and other fees and charges, Mortgagor hereby assigns, pledges, and grants Mortgagee a continuing security interest in and to:

**Proceeds.** Any and all proceeds derived or to be derived from the sale, transfer, conveyance, insurance loss, damage, destruction, condemnation, expropriation, or other taking of the Property, or other proceeds and proceeds of proceeds, and any unearned insurance premiums relating thereto, including the rights of Mortgagor to receive such proceeds directly from the obligor or obligors therefor, and to further enforce any rights that Mortgagor may have to collect such proceeds, including without limitation, Mortgagor's rights to commence an appropriate collection or enforcement action or actions incident thereto.

**Leases, Rents and Profits.** Any and all present and future leases or subleases affecting the mortgaged Property, and all rents, income, and profits therefrom, including without limitation, any and all rents, income, profits, bonuses, revenues, royalties, cash or security deposits, advance rentals and other payments, and further including Mortgagor's rights to enforce all present and future leases or subleases and to receive and enforce any rights that Mortgagor might have to collect rental and all other payments.

**Deposits.** Any and all present and future deposits or other security or advance payments, including rental payments, made by or on behalf of Mortgagor to others, with respect to (1) utility service regarding the Property, (2) cleaning, maintenance, repair, or similar services regarding the Property, (3) refuse removal or sewer service regarding the Property, (4) rentals of equipment, if any, used in the operation by or on behalf of Mortgagor regarding the Property, and/or (5) parking or similar services or rights regarding the Property.

**Options.** Any and all present and future options to sell or lease the mortgaged Property or any interest therein.

**Contract Rights.** To the extent assignable and/or transferrable, any and all of Mortgagor's present and future contract rights, instruments, documents, and general intangibles necessary for use or useful in connection with the ownership and operation of all or any part of the Property, whether now existing or hereafter created, or otherwise acquired by Mortgagor, and all liens, security interests, guaranties, remedies, privileges and other rights pertaining thereto, and all rights and remedies of any kind forming the subject matter thereof.

**REPRESENTATIONS AND WARRANTIES CONCERNING RIGHTS.** Mortgagor represents and warrants that: (A) Mortgagor is and/or will be the lawful owner of all of the Rights; (B) Mortgagor has the right to collaterally assign and pledge all such Rights to Mortgagee; (C) Mortgagor has not granted any previous security interests and has not otherwise encumbered any of Mortgagor's Rights; (D) to the extent applicable, all of Mortgagor's Rights that consist of or give rise to obligations of third parties, represent and/or will at all times continue to represent bona fide obligations of the obligors thereunder, free of any offset, compensation, deduction or counterclaim. The collateral assignment and pledge of Mortgagor's Rights are further binding upon Mortgagor, as well as Mortgagor's heirs, successors, representatives and assigns, and are legally enforceable in accordance with the foregoing terms and conditions.

**ADDITIONAL OBLIGATIONS OF MORTGAGOR WITH REGARD TO COLLATERALLY ASSIGNED AND PLEDGED RIGHTS.** Mortgagor additionally agrees:

**Prohibitions Regarding Property.** So long as this Mortgage remains in effect, Mortgagor shall not, without the prior written consent of Mortgagee, sell, transfer, forego, assign, do anything or permit anything to be done that may in any way affect Mortgagee's security interests and rights in and to the mortgaged Property, or create or permit to exist any Encumbrance in or against any of the Property, in favor of any person other than Mortgagee.

**No Settlement or Compromise.** Mortgagor shall not, without the prior written consent of

15018462 & 15018463

Mortgagee, compromise, settle, adjust or extend payment under or with regard to any of Mortgagor's Rights subject hereto.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Mortgagee to examine and audit Mortgagor's books and records at all reasonable times.

**Notice to Obligors.** Upon request by Mortgagee, Mortgagor immediately will notify individual obligors and debtors under Mortgagor's Rights, advising such obligors and debtors of the fact that their respective agreements or obligations have been collaterally assigned and pledged to Mortgagee. In the event that Mortgagor should fail to provide such notices for any reason upon Mortgagee's request, Mortgagor agrees that Mortgagee may forward appropriate notices to such obligors and debtors either in Mortgagee's name or in Mortgagor's name.

**Protection of Rights.** Mortgagor will at all times protect and preserve all of Mortgagor's Rights.

**Notice of Change of Names.** Mortgagor will promptly notify Mortgagee of any change in Mortgagor's name, including any change to the assumed business names of Mortgagor. Mortgagor will also promptly notify Mortgagee of any change in Mortgagor's social security number or employer identification number. Mortgagor further agrees to notify Mortgagee in writing prior to any change in address or location of Mortgagor's principal office.

**EVENTS OF DEFAULT.** The following actions or inactions or both shall constitute Events of Default under this Mortgage:

**Default Under Loan Agreement.** If an Event of Default occurs or exists under the terms of Mortgagor's Loan Agreement in favor of Mortgagee.

**Default Under the Note.** Should Mortgagor default in the payment of principal or interest under the Note or any of the Indebtedness.

**Default Under this Mortgage.** Should Mortgagor violate, or fail to comply fully with any of the terms and conditions of, or default under this Mortgage.

**Default Under other Agreements.** Should any default occur or exist under any Related Document which directly or indirectly secures repayment of any of the Indebtedness.

**Other Defaults in Favor of Mortgagee.** Mortgagor or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Mortgagee.

**Default In Favor of Third Parties.** Should any guarantor or Mortgagor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Mortgagor's property or Mortgagor's or any guarantor's ability to repay the Indebtedness or any guarantor's or Mortgagor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**Death.** Mortgagor, or any guarantor of the Indebtedness, dies.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Mortgagor or any Guarantor occur or exist.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, composition or extension under any insolvency law be brought by or against Mortgagor or any Guarantor.

**Assignment for Benefit of Creditors.** Should Mortgagor or any Guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Mortgagor's property, or the property of any Guarantor, be applied for or appointed.

15018462 & 15018463

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Mortgagor or any guarantor are commenced.

**Failure to Pay Additional Advances.** Mortgagor fails to pay any Additional Advance, together with interest thereon, as provided in this Mortgage, upon Mortgagee's demand.

**False Statements.** Any warranty, representation or statement made or furnished to Mortgagee by Mortgagor or on Mortgagor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Mortgagee in good faith believes itself insecure with regard to repayment of the Indebtedness.

**OTHER DEFAULTS.** Mortgagor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Mortgagee and Mortgagor.

**MORTGAGEE'S RIGHTS UPON DEFAULT.** Should one or more Event of Default occur or exist under this Mortgage, as provided above, Mortgagee, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights and remedies provided by law:

**Acceleration; Foreclosure.** Mortgagee shall have the right, at its sole option, to accelerate the maturity and demand immediate payment in full of any and all of the Indebtedness. Mortgagee shall have the additional right, again at its sole option, to declare the aforesaid Note to be immediately due and payable, in principal, interest, costs and attorney's fees. Mortgagee shall then have the right to commence appropriate foreclosure proceedings against the Property and against Mortgagor's Rights as provided in this Mortgage.

**Seizure and Sale of Property.** In the event that Mortgagee elects to commence appropriate Louisiana foreclosure proceedings under this Mortgage, Mortgagee may cause the Property, or any part or parts thereof, with the exception of any Rights described in the "Leases, Rents, and Profits" provision above, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Mortgagor or placing Mortgagor in default, all of which are expressly waived.

**Executory Process.** For purposes of foreclosure under Louisiana executory process procedures, Mortgagor confesses judgment and acknowledges to be indebted to Mortgagee, up to the full amount of the Note in principal, interest, costs, expenses, reasonable attorneys' fees and other fees and charges. Mortgagor further confesses judgment and acknowledges to be indebted unto and in favor of Mortgagee in the amount of all Additional Advances that Mortgagee may make on Mortgagor's behalf pursuant to this Mortgage, together with interest thereon, up to a maximum of two (2) times the face amount of the Note. To the extent permitted under applicable Louisiana law, Mortgagor additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Mortgagor further agrees that any declaration of fact made by authentic act before a Notary Public and two witnesses, by a person declaring that such facts are within his or her knowledge, shall constitute authentic evidence of such facts for purposes of foreclosure under applicable Louisiana law and for purposes of La. R.S. 9:3504(D)(6) and La.

15018462 & 15018463

R.S. 10:9-629, to the extent applicable.

**Keeper.** Should any or all of the Property be seized as an incident to an action for the recognition or enforcement of this Mortgage, by executory process, sequestration, attachment, writ of fieri facias or otherwise, Mortgagor hereby agrees that the court issuing any such order shall, if requested by Mortgagee, appoint Mortgagee, or any agent designated by Mortgagee or any person or entity named by Mortgagee at the time such seizure is requested, or any time thereafter, as Keeper of the Property as provided under La. R.S. 9:5136, et seq. Such a Keeper shall be entitled to reasonable compensation. Mortgagor agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Mortgage in the form of an Additional Advance as provided in this Mortgage.

**Declaration of Fact.** Should it become necessary for Mortgagee to foreclose under this Mortgage, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. 9:3509.1, La. R.S. 9:3504(D)(6) and La. R.S. 10:9-629, as applicable.

**Separate Sale of Mortgagor's Rights Following Default.** Should one or more Event of Default occur or exist under this Mortgage, Mortgagee shall have the additional right, at its sole option, to separately sell the aforesaid Rights, or any part or parts thereof, with the exception of any Rights described in the "Leases, Rents and Profits" provision above, at private or public sale, at such price or prices as Mortgagee may deem best, either for cash or for any other compensation, or on credit, or for future delivery, without the assumption of any credit risk. The sale of the aforesaid Rights may be without appraisement, the benefit of which is also expressly waived by Mortgagor. Mortgagee may exercise any other remedies with regard to Mortgagor's Rights as may be authorized under the Louisiana Commercial Laws (La. R.S. 10:9-101, et seq.).

**Automatic Transfer of Rights.** In the event of foreclosure under this Mortgage, or other transfer of title or assignment of the Property, or any part or parts thereof, in lieu of payment of the Indebtedness , whether in whole or in part, all policies of insurance and other Rights applicable to the foreclosed upon or transferred Property shall automatically inure to the benefit of and shall pass to the purchaser(s) or transferee(s) thereof, subject to the rights of the purchaser(s) or transferee(s) to reject such insurance coverage and/or Rights at its or their sole option and election.

**Specific Performance.** Mortgagee may, in addition to or in lieu of the foregoing remedies, in Mortgagee's sole discretion, commence an appropriate action against Mortgagor seeking specific performance of any covenant contained in this Mortgage or in aid of the execution or enforcement of any power in this Mortgage granted.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Mortgagee's rights and remedies, whether evidenced by this Mortgage or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Mortgagee to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Mortgagor under this Mortgage, after Mortgagor's failure to perform, shall not affect Mortgagee's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Mortgagee following an Event of Default, or in any way to limit or restrict the rights and ability of Mortgagee to proceed directly against Mortgagor and/or against any other co-maker, guarantor, surety or endorser of the Indebtedness, and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**MORTGAGEE'S RIGHT TO DIRECTLY COLLECT AND RECEIVE PROCEEDS AND PAYMENTS BEFORE OR AFTER DEFAULT.** Mortgagee shall have the right, at its sole option and election, at any time, whether or not one or more Event of Default then exist under this Mortgage, to directly collect and receive all proceeds and/or payments arising under or in any way accruing from

15018462 & 15018463

Mortgagor's Rights, as such amounts become due and payable. In order to permit the foregoing, Mortgagor unconditionally agrees to deliver to Mortgagee, immediately following demand, any and all of Mortgagor's records, ledger sheets, and other documentation, in the form requested by Mortgagee, with regard to Mortgagor's Rights and any and all proceeds and/or payments applicable thereto.

Mortgagee shall have the further right, whether or not an Event of Default then exists under this Mortgage, where appropriate and within Mortgagee's sole discretion, to file suit, either in Mortgagee's own name or in the name of Mortgagor, to collect any and all proceeds and payments that may then and/or in the future be due and owing under and/or as a result of such rights. Where it is necessary for Mortgagee to attempt to collect any such proceeds and/or payments from the obligors therefor, Mortgagee may compromise, settle, extend, or renew for any period (whether or not longer than the original period) any obligation or indebtedness thereunder or evidenced thereby, or surrender, release, or exchange all or any part of said obligation or indebtedness, without affecting the liability of Mortgagor under this Mortgage or under the Indebtedness. To that end, Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact, coupled with an interest and with full power of substitution, to take any and all such actions and any and all other actions permitted hereby, either in the name of Mortgagor or Mortgagee.

**PROTECTION OF MORTGAGEE'S SECURITY RIGHTS.** Mortgagor will be fully responsible for any losses that Mortgagee may suffer as a result of anyone other than Mortgagee asserting any rights or interest in or to the Property and/or Mortgagor's Rights collaterally assigned and pledged hereunder. Mortgagor agrees to appear in and to defend all actions or proceedings purporting to affect Mortgagee's security interests in any of the Property and/or Rights subject to this Mortgage and any of the rights and powers granted Mortgagee hereunder. In the event that Mortgagor fails to do what is required of it under this Mortgage, or if any action or proceeding is commenced naming Mortgagee as a party or affecting Mortgagee's security interests or the rights and powers granted under this Mortgage, then Mortgagee may, without releasing Mortgagor from any of its obligations under this Mortgage, do whatever Mortgagee believes to be necessary and proper within its sole discretion to protect the security of this Mortgage, including without limitation making Additional Advances on Mortgagor's behalf as provided herein. Should the reappraisal of the Property occur, whether to comply with appropriate regulatory requirements or otherwise, Mortgagor agrees to pay the costs of such appraisal or reappraisals or to reimburse Mortgagee for the costs thereof.

**INDEMNIFICATION OF MORTGAGEE.** Mortgagor agrees to indemnify, to defend and to save and hold Mortgagee harmless from any and all claims, suits, obligations, damages, losses, costs, expenses (including, without limitation, Mortgagee's attorney's fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Mortgagee, its officers, directors, employees, and agents arising out of or in any manner occasioned by this Mortgage and the exercise of the rights and remedies granted Mortgagee hereunder. The foregoing indemnity provisions shall survive the cancellation of this Mortgage as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Mortgagee elects to exercise any of the remedies as provided under this Mortgage following default hereunder.

**EXECUTION OF ADDITIONAL DOCUMENT.** Mortgagor agrees to execute all additional documents, instruments and agreements that Mortgagee may deem to be necessary and proper, within its sole discretion, in form and substance satisfactory to Mortgagee, to keep this Mortgage in effect, to better reflect the true intent of this Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document heretofore, now or at any time or times hereafter executed by Mortgagor and delivered to Mortgagee. Mortgagor further agrees to execute whatever acknowledgments, and to furnish Mortgagee with such other security, as Mortgagee may require prior to the date on which repayment under the aforesaid pledged Note may be or become barred by any applicable statute of limitations or prescriptive period.

**INSPECTION OF PROPERTY.** Mortgagee and Mortgagee's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Property wherever located.

15018462 & 15018463

**AUDITS.** Mortgagee and its agents may also periodically conduct audits of Mortgagor's books and records that in any way pertain to the Property, the foregoing Rights and any part or parts thereof.

**APPLICATION OF PAYMENTS.** Mortgagor agrees that all payments and other sums and amounts received by Mortgagee under the Note or under this Mortgage, including, but not limited to, the net proceeds of any judicial or other sale, of any charter, management or other use of the Property by Mortgagee, of any claim for damages to the Property and of any insurance proceeds received by Mortgagee (except to the extent that such insurance proceeds are to be paid to Mortgagor pursuant to any other provisions of this Mortgage) shall be held and applied by Mortgagee from time to time in accordance with the terms of the Note.

**TAXATION.** In the event that there should be any change in law with regard to taxation of mortgages or the debts they secure, Mortgagor agrees to pay any taxes, assessments or charges that may be imposed upon Mortgagee as a result of this Mortgage.

**ADDITIONAL REPRESENTATIONS AND WARRANTIES.** Mortgagor further represents, warrants and covenants that:

**Organization.** Mortgagor is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Louisiana. Mortgagor is duly authorized to transact business in all other states in which Mortgagor is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Mortgagor is doing business. Specifically, Mortgagor is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Mortgagor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Mortgagor maintains an office at 401 N Lakeshore Drive, Lake Charles, LA 70601. Unless Mortgagor has designated otherwise in writing, the principal office is the office at which Mortgagor keeps its books and records including its records concerning the Collateral. Mortgagor will notify Mortgagee prior to any change in the location of Mortgagor's state of organization or any change in Mortgagor's name. Mortgagor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Mortgagor and Mortgagor's business activities.

**Authorization.** Mortgagor's execution, delivery, and performance of this Mortgage and all the Related Documents have been duly authorized by all necessary action by Mortgagor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Mortgagor's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Mortgagor or (2) any law, governmental regulation, court decree, or order applicable to Mortgagor or to Mortgagor's properties.

**Consents and Approvals.** If notice to or the consent or approval of any governmental body or authority, or any third party (including without limitation, any other creditor of Mortgagor) is now or any time hereafter required in connection with the execution, delivery and performance by Mortgagor of this Mortgage, then (1) with respect to all currently applicable requirements, such notice has been given and consent or approval obtained by Mortgagor prior to the execution hereof and written evidence thereof has been concurrently herewith delivered to Mortgagee, and (2) with respect to such requirements that shall at any time hereafter be imposed or become applicable, such notice will be given and such consent or approval will be obtained by Mortgagor prior to the time such failure to do so will constitute a violation of law or result in any breach, default or failure by Mortgagor under any contract or instrument, and written evidence thereof will at such time be delivered to Mortgagee.

**ADDITIONAL WAIVERS.** In granting this Mortgage, Mortgagor waives any and all homestead exemptions and other rights and all other exemptions from seizure or sale with regard to the Property

15018462 & 15018463

to which Mortgagor may be entitled under the laws of the State of Louisiana. Mortgagor is also waiving the production of Mortgage, Conveyance and any and all other Certificates and relieves and releases the Notary Public before whom this Mortgage was passed from all responsibility and liability in connection therewith.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Mortgage, and no consent to any departure by Mortgagor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Mortgagee, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Effect of Waivers.** Any failure or delay on the part of the Mortgagee to exercise any of the rights and remedies granted under this Mortgage, or under Mortgagor's pledge agreement or agreements, or under Mortgagor's Note, or under any other agreement or agreements by and between Mortgagor and Mortgagee, shall not have the effect of waiving any of Mortgagee's rights and remedies. Any partial exercise of any rights and remedies granted to Mortgagee shall furthermore not constitute a waiver of any of Mortgagee's other rights and remedies; it being Mortgagor's intent and agreement that all of Mortgagee's rights and remedies shall be cumulative in nature. Furthermore, any failure on the part of Mortgagee at any time or times hereafter to require strict performance by Mortgagor of any of the provisions, warranties, terms and conditions contained herein or in any other agreement, document or instrument now or hereafter executed by Mortgagor and delivered to Mortgagee, shall not waive, affect, or diminish the rights of Mortgagee to thereafter demand strict compliance and performance therewith and with respect to all other provisions, warranties, terms and conditions contained herein or therein. None of the warranties, conditions, provisions and terms contained in this Mortgage or any other agreement, document, or instrument now or hereafter executed by Mortgagor and delivered to Mortgagee, shall be deemed to have been waived by any act or knowledge of Mortgagee, its agents, directors, officers or employees; but only by an instrument in writing specifying such waiver, signed by a duly authorized officer of Mortgagee and delivered to Mortgagor. A waiver or forbearance on the part of Mortgagee as to one Event of Default shall not constitute a waiver or forbearance as to any other or subsequent default.

**Successors and Assigns Bound; Solidary Liability.** Mortgagor's obligations and agreements under this Mortgage shall be binding upon Mortgagor's successors, heirs, legatees, devisees, administrators, executors and assigns. In the event that there is more than one Mortgagor under this Mortgage, all of the agreements and obligations made and/or incurred by Mortgagors under this Mortgage shall be on a "solidary" or "joint and several" basis.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. (c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Severability.** If any provision of this Mortgage is held to be illegal, invalid or unenforceable

15018462 & 15018463

under present or future laws effective during the term hereof, such provision shall be fully severable. This Mortgage shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Mortgage shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Mortgage, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**WAIVER OF CERTIFICATES.** The parties to this Mortgage hereby waive the production of mortgage, conveyance, tax, paving, chattel mortgage, assignment of accounts, and all other certificates and relieve and release the Notary before whom this Mortgage was passed from all responsibilities and liabilities in connection therewith.

**POSSESSION OF NOTE.** The parties to this Mortgage hereby agree that Mortgagor's possession of the aforesaid Note, at any time and for any reason, shall not have any effect upon the continued validity and/or enforceability of this Mortgage, and that Mortgagor may grant a security interest in the aforesaid Note, from time to time, one or more times, within Mortgagor's sole election and discretion, whether to Mortgagee or to any subsequent holder or holders of the aforesaid Note.

**WAIVE JURY. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.):

**Additional Advance.** The words "Additional Advance" mean any and all additional sums that Mortgagee may advance on Mortgagor's behalf as provided under this Mortgage.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Mortgagor or on Mortgagor's behalf on a line of credit or multiple advance basis under the terms and conditions of this Mortgage.

**Borrower.** The word "Borrower" means PARK CAPITAL ACQ LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Encumbrance.** The word "Encumbrance" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges and other contractual and/or statutory security interests and rights, of every nature and kind, whether in admiralty, at law, or in equity, that now and/or in the future may affect the Property or any part or parts thereof.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**ERISA.** The word "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and including all regulations and published interpretations of the act.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the default section of this Mortgage.

15018462 & 15018463

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means and includes all amounts identified in the Indebtedness section of this Mortgage.

**Mortgage.** The word "Mortgage" means this Collateral Mortgage as this Collateral Mortgage may be amended, supplemented, restated or otherwise modified from time to time.

**Mortgagee.** The word "Mortgagee" means Celtic Bank Corporation, Mortgagee's successors and assigns, and any future holder or holders of the Note or any interest therein.

**Mortgagor.** The word "Mortgagor" means individually, collectively and interchangeably PARK CAPITAL ACQ LLC, as well as any and all persons and entities subsequently purchasing the mortgaged Property, with or without assumption of this Mortgage.

**Note.** The word "Note" means the Collateral Mortgage Note as described in the Collateral Mortgage Note section of this Mortgage.

**Property.** The word "Property" means all of Mortgagor's right, title and interest in and to all the Property as described in the "Granting of Mortgage" section of this Mortgage.

**Real Property.** The words "Real Property" mean the real immovable property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Note.

**Rights.** The word "Rights" means any and all of Mortgagor's additional rights collaterally assigned and pledged to Mortgagee as provided under this Mortgage.

15018462 & 15018463

THUS DONE AND PASSED, on the day, month and year first written above, in the presence of the undersigned Notary and the undersigned competent witnesses, who hereunto sign their names with Mortgagor after reading of the whole.

WITNESSES:

X _____
Witness    Michele Scher

X _____
Witness    Holly A. Root

MORTGAGOR:

PARK CAPITAL ACQ LLC

By: _____
Abraham Bodek, Manager of PARK CAPITAL ACQ LLC

LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF NJ                                    )
                                               ) SS
PARISH OF Ocean                                )

BE IT KNOWN, that on this ___30___ day of ___Dec___, 20 04 ;

BEFORE ME, a Notary Public,

PERSONALLY CAME AND APPEARED:

Abraham Bodek, Manager of PARK CAPITAL ACQ LLC, a partner or designated agent of PARK CAPITAL ACQ LLC, who, being duly sworn, did say and acknowledge that he or she executed the foregoing on behalf of said limited liability company as its free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said Parish and State the date and year last above written.

Sworn to and subscribed before me this ___30___ day of _____, 20 21.

_____
Notary Public

LA Bar/Notary ID No. _____

LEAH M. SPITZ
NOTARY PUBLIC
STATE OF NEW JERSEY
COMMISSION EXPIRES 04/01/2025

15018462 & 15018463

## EXHIBIT "A"

### Legal Description of Land

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

## EXTRACT OF MINUTES
### PARK CAPITAL ACQ, LLC

BE IT RESOLVED, that the sole Members and Manager of PARK CAPITAL ACQ, LLC, a Delaware limited liability company (the "Company") acting in such capacity, hereby adopt the following, to-wit:

WHEREAS, the Company would like to purchase certain immovable property more particularly described on Exhibit "A" attached hereto (the "Property");

BE IT RESOLVED that Abraham Bodek, Manager (the "Authorized Representative"), in the name of and on behalf of the Company, is authorized and empowered to purchase, buy, and acquire the Property upon such terms and conditions as the Authorized Representative may deem fit and proper;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized and empowered for and on behalf of and in the name of the Company to do all of the following relating to the Property, to-wit: (i) to negotiate for a loan or loans with any financial institutions and to borrow such sums of money to be repaid at such times and to bear such interest as the Authorized Representative may, in his/her sole discretion, deem fit and proper; (ii) to make, sign and execute negotiable promissory notes, and any other obligations, in the name of the Company; (iii) to mortgage and/or otherwise encumber any and all of the Property to secure any loan or loans, and/or any and all other obligations of the Company with such acts of mortgage to include any terms and conditions deemed appropriate in the sole discretion of the Authorized Representative (including but not limited to all of the usual and customary clauses contained in mortgage and/or security instruments in Louisiana, including a confession of judgment, consent to executory process, waiver of appraisement, and the pact de non alienando); and (iv) to file or allow the filing of UCC-1s and other UCC Financing Statements related thereto and to do any other acts and sign any and all documents and instruments as the Authorized Representative may deem necessary or appropriate in order to carry out the purposes of these resolutions, including execution of title insurance seller/owner affidavits, and closing/settlement statements;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized in the name of and on behalf of the Company to take such further actions and to do all things that may appear in his/her discretion to be necessary, advisable or appropriate to give effect to the intent of these resolutions and to accomplish the transactions contemplated by these resolutions; and

BE IT FURTHER RESOLVED that all actions heretofore taken by or at the discretion of Authorized Representative in connection with the transactions that are the subject of these resolutions shall be, and hereby are, approved, ratified and confirmed as the acts of the Company without any further action by the Company.

* * * * * * * * * * * * * * * * * * *
### CERTIFICATE

I, the undersigned, Member, Manager and certifying official of PARK CAPITAL ACQ, LLC (the "Company"), hereby certify that (i) the foregoing resolutions were adopted by the unanimous consent of the Members and Manager of the Company, (ii) the foregoing resolutions are legally effective to bind the Company and are not in conflict with the Articles of Organization or any operating agreements; and (iii) the above resolutions remain in full force and effect.

THUS DONE AND SIGNED on this __3__ day of January, 2022, in
_Ocean_   NJ

PARK CAPITAL ACQ, LLC

_____
Abraham Bodek
Member/Manager/Certifying Official

Goldie M Senderovitz
NOTARY PUBLIC
State of New Jersey
ID # 50090701
My Commission Expires 9/20/2023

_____
NOTARY PUBLIC

## EXHIBIT "A"

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive for the centerline of State Project 3-30-05) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

## Calcasieu Parish Recording Page

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**Received From :**
ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

**First MORTGAGOR**

| PARK CAPITAL ACQ LLC |
|---|

**First MORTGAGEE**

| CELTIC BANK CORPORATION |
|---|

**Index Type :    MORTGAGES**                         **File Number : 3454973**

**Type of Document : PLEDGE**

                                                        **Book : 5855        Page : 613**

**Recording Pages :        16**

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Calcasieu Parish, Louisiana.

On (Recorded Date) : 01/06/2022

At (Recorded Time) : 10:29:32AM

Deputy Clerk

Doc ID - 034287490016

**Return To :**    ROBICHAUX, MIZE & WADSACK LLC    (8)
1777 RYAN ST
LAKE CHARLES, LA 70601

Do not Detach this Recording Page from Original Document



# PLEDGE OF LEASES AND RENTS

| Grantor: | PARK CAPITAL ACQ LLC<br>401 N Lakeshore Drive<br>Lake Charles, LA 70601 | Lender: | Celtic Bank Corporation<br>268 S. State Street<br>Suite 300<br>Salt Lake City, UT 84111 |
|----------|---------|---------|---------|

THIS PLEDGE OF LEASES AND RENTS dated December 30, 2021, is made and executed between PARK CAPITAL ACQ LLC, whose address is 401 N Lakeshore Drive, Lake Charles, LA 70601 (referred to below as "Grantor") and Celtic Bank Corporation, whose address is 268 S. State Street, Suite 300, Salt Lake City, UT 84111 (referred to below as "Lender").

CROSS-COLLATERALIZATION. In addition to the Note, this Pledge secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Pledge means all of Grantor's present and future rights, title, interest and remedies in, to and under any and all Leases and Rents of all or a portion of the following described immovable (real) property located in Calcasieu Parish, State of Louisiana (the "Property"):

The immovable (real) property specifically described as follows:

See Exhibit A , which is attached to this Pledge and made a part of this Pledge as if fully set forth herein.

Together with any and all present and future buildings, constructions, component parts, improvements, attachments, appurtenances, fixtures, rights, ways, privileges, advantages, batture, and batture rights, servitudes and easements of every type and description, now and/or in the future relating to the Property, and any and all items and fixtures attached to and/or forming integral or component parts of the Property in accordance with the Louisiana Civil Code.

The Property or its address is commonly known as 401 N Lakeshore Drive, Lake Charles, LA 70601.

GRANT OF SECURITY INTEREST. Grantor assigns, pledges and hereby grants to Lender a continuing security interest in the above-described Collateral to secure the prompt and punctual payment and satisfaction of the Indebtedness. This Pledge shall remain in effect until such time as this Pledge and the security interests created hereby are terminated and cancelled by Lender under a written cancellation instrument in favor of Grantor.

DELIVERY OF DOCUMENTS. Contemporaneously with the execution of this Pledge, Grantor shall deliver to Lender or Lender's designated agent, any and all documents, instruments and other

15018462 & 15018463

Case 3:25-cv-01511-RK-JBD   Document 1-13   Filed 02/26/25   Page 35 of 71 PageID:
263
Page 3 of 16                                                           File Number: 3454973   Page 3 of 16

writings evidencing or giving rise to the Collateral. As long as this Pledge remains in effect, Grantor shall immediately deliver to Lender or to Lender's designated agent, any and all future documents, instruments, or other writings applicable or in any way germane to such Collateral.

**NOTICE TO OBLIGORS.** Upon request by Lender, Grantor shall immediately notify individual lessees, sublessees and/or obligors under the Collateral, advising such lessees, sublessees and/or obligors of the fact that their obligations have been assigned to Lender. In the event that Grantor should fail to provide such notices for any reason upon request by Lender, Grantor agrees that Lender may forward appropriate notices to such lessees, sublessees and/or obligors, either in Lender's name or in the name of Grantor.

**GRANTOR'S OBLIGATIONS AS LESSOR.** Grantor shall faithfully perform any and all of Grantor's obligations as lessor or sublessor of the Property, with Grantor further agreeing not to do, neglect to do, or permit to be done, anything that may result in the modification, substitution or termination of any such Lease, or the obligations of any lessee or sublessee, or any other person, or which may diminish or impair the value of any Lease, or rents provided therein, or the interests of Grantor or Lender therein or thereunder. Grantor shall further immediately notify Lender in writing of any default, substitution, cancellation, or notice of cancellation under any such Lease. Grantor will not, without the prior written consent of Lender, which consent shall not be unreasonably withheld: (A) cancel, terminate, or accept a surrender or permit any substitution, cancellation, termination or surrender of any Lease; (B) modify any Lease as to reduce the term thereof, or the payments thereunder, or change any renewal provisions contained therein; (C) commence any summary proceeding or other action to recover possession of any of the Property, other than a proceeding brought in good faith resulting from a default by the lessee or sublessee under the terms and conditions of the Lease; (D) receive or collect, or permit the receipt or collection of, any rental payments under any Lease except in accordance with the terms and conditions of the Lease previously approved by Lender in writing; (E) take any other action with respect to any Lease that may tend to impair the security of Lender under this Pledge; (F) lease, sublease, or extend any present Lease other than in the manner provided for therein, or enter into any future leases of all or any portion of the Property except on the best terms reasonably obtainable, under leases which shall in all respects be satisfactory to Lender as to the form and substance, and the credit standing of the respective lessees or sublessees thereunder; or (G) sell, assign, or otherwise transfer any such Lease.

**DEFAULT UNDER GRANTOR'S OBLIGATIONS.** Should Grantor for any reason fail to comply with Grantor's obligations under the Note or any of the other Indebtedness, Lender may make additional advances on Grantor's behalf and/or take such other action or actions as Lender may deem proper within its sole discretion, to perform such obligations on Grantor's behalf and to cure and rectify any such default or defaults and/or to prevent additional defaults on Grantor's part. All additional sums advanced by Lender for such purposes, together with interest thereon at the rate provided under the Note or at the legal rate of interest provided under applicable law, whichever is higher, shall constitute additional Indebtedness secured by this Pledge.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) Grantor is, and will continue to be, the legal and beneficial owner of the Collateral for the duration of the Indebtedness; (B) Grantor has the right, power and authority to enter into this Pledge, to assign and pledge the Collateral to Lender to secure repayment of the Indebtedness;(C) Grantor's execution and delivery of this Pledge and Grantor's performance hereunder, will not result in any violation of any provision of Grantor's Articles of Organization and Governance or violate or constitute a default under the terms of any agreement, indenture or other instrument, license, judgment, decree, order, law, statute, ordinance or other governmental rule or regulation applicable to the Property or any of Grantor's property; (D) Grantor has not made any previous assignments or pledges or otherwise encumbered the Collateral; (E) upon its proper recordation, this Pledge shall create a valid first lien in favor of Lender upon, and perfect a security interest in, the Collateral, subject to no prior security interest, lien, charge, encumbrance or agreement purporting to grant to any third party a security interest in the Collateral; (F) such Collateral represents and/or will represent bona fide

15018462 & 15018463

obligations of the lessees, sublessees and/or other obligors thereunder, free of any offset, compensation, deduction or counterclaim; (G) such Collateral is and will continue to be in full compliance with all applicable state and federal laws and regulations; and (H) this Pledge is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties set forth in this Pledge, shall be continuing in nature and shall remain in full force and effect until such time as this Pledge is cancelled in the manner provided hereinabove.

**PROTECTION OF LENDER'S SECURITY INTERESTS.** Grantor will be fully responsible for any losses that Lender may suffer as a result of anyone other than Lender asserting any rights or interest in or to all or any part of the Collateral. Grantor agrees to appear in and to defend all actions or proceedings purporting to affect Lender's security interests in any of the Collateral subject to this Pledge and any of the rights and powers granted Lender hereunder. In the event that Grantor fails to do what is required of it under this Pledge, or if any action or proceeding is commenced naming Lender as a party or affecting Lender's security interests in the Collateral or the rights and powers granted to Lender under this Pledge, then Lender may, without demand upon Grantor and without releasing Grantor from any of its obligations under this Pledge, do whatever Lender believes is necessary and proper within its sole discretion to protect the security of this Pledge. Grantor agrees to reimburse Lender for its costs associated therewith, including without limitation, Lender's reasonable attorneys' fees, which additional costs and expenses shall be secured by this Pledge.

**INDEMNIFICATION OF LENDER.** Grantor agrees to indemnify, defend, save and hold Lender harmless from any and all claims, losses, costs, expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeiture of any nature whatsoever which may be asserted against or incurred by Lender arising out of or in any manner occasioned by this Pledge or any rights conferred upon Lender hereunder. The foregoing indemnification shall survive the cancellation of this Pledge as to all matters arising or accruing prior to such cancellation and the foregoing indemnification shall further survive in the event that Lender elects to exercise any of the remedies as provided under this Pledge.

**ADDITIONAL OBLIGATION OF GRANTOR.** The following shall constitute additional obligations of Grantor under this Pledge:

**ADDITIONAL SECURITY.** In the event that any of the Collateral should become unsatisfactory to Lender for any reason, Grantor agrees to immediately provide Lender with additional collateral security as may then be acceptable to Lender.

**NO SALE OR ENCUMBRANCE.** As long as this Pledge remains in effect, Grantor unconditionally agrees not to sell, assign, pledge or create or permit to exist any lien or security interest in or against any of the Collateral in favor of any person or entity other than Lender.

**NO SETTLEMENT OR COMPROMISE.** Grantor will not, without the prior written consent of Lender, compromise, settle, adjust or extend payment under any of the Collateral.

**BOOKS AND RECORDS.** Grantor will keep proper books and records with regard to Grantor's business activities and the Collateral, which books and records shall at all times be open to inspection and copying by Lender or its designated agent. Lender shall also have the right to inspect Grantor's books and records, and to discuss Grantor's affairs and finances with Grantor at such reasonable times as Lender may designate.

**VERIFICATIONS.** Lender or Lender's agents may periodically contact individual lessees, sublessees or obligors whose obligations have been assigned and pledged under this Pledge in order to verify such obligations, determine whether such lessees, sublessees or obligors have any offsets or counterclaims against Grantor, and with respect to such other matters about which Lender may inquire.

**NOTIFICATION OF LENDER.** Grantor will promptly deliver to Lender all written notices, and will

15018462 & 15018463

promptly give Lender written notice of any other notices received by Grantor with respect to the Property or the Collateral and Lender will promptly give like notice to Grantor of any such notices received by Lender or its nominee.

**NOTICE TO OBLIGORS.** Upon request by Lender, Grantor immediately will notify individual lessees, sublessees and obligors under the Collateral, advising such lessees, sublessees and obligors of the fact that their obligations have been assigned to Lender. In the event that Grantor should fail to provide such notices for any reason upon Lender's request, Grantor agrees that Lender may forward appropriate notices to such lessees, sublessees and obligors either in Lender's name or in Grantor's name.

**ADDITIONAL DOCUMENTS.** Grantor further agrees to execute and deliver to Lender upon request all additional documents which Lender may deem necessary and proper, within its sole discretion, to better reflect the true intent of this Pledge.

**LIMITED OBLIGATIONS OF LENDER.** Beyond the exercise of reasonable care to assure the safe custody of any documents relating to the Collateral delivered to Lender, Lender shall have no duty or liability to preserve any of the Collateral and shall be relieved of all responsibility upon surrendering to Grantor the various documents, instruments and other writings relating thereto then in Lender's possession.

**EFFECT OF WAIVERS.** Grantor has waived, and/or does by these presents waive, demand, presentment for payment, protest, notice of protest and notice of non-payment under any and all of the Indebtedness secured by this Pledge. Grantor has further waived, and/or does by these presents waive, all pleas of division and discussion with regard to the Indebtedness and agrees that Grantor shall remain liable together with all guarantors, endorsers and sureties of the Indebtedness on a "joint and several" or "solidary" basis. Grantor further agrees that discharge or release of any party who is or will be liable under any of the Indebtedness, or the release of any collateral directly or indirectly securing repayment of the same, shall not have the effect of releasing Grantor, and/or the Property, and/or any other party or parties guaranteeing payment of the Indebtedness, who shall remain liable to Lender, and/or of releasing any other collateral that is not expressly released by Lender.

Grantor additionally agrees that Lender's acceptance of payments other than in accordance with the terms of any agreement or agreements governing repayment of the Indebtedness, or Lender's subsequent agreement to extend or modify such repayment terms, shall likewise not have the effect of releasing Grantor and/or of releasing the Property, and/or any other party or parties guaranteeing payment of the Indebtedness from their respective obligations to Lender, and/or of releasing any other collateral directly or indirectly securing repayment of the Indebtedness. In addition, no course of dealing between Grantor and Lender, nor any failure or delay on the part of the Lender to exercise any of the rights and remedies granted to Lender under this Pledge, or under any other agreement or agreements by and between Grantor and Lender, shall have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender's other rights and remedies, it being Grantor's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Grantor further agrees that, should Grantor default under any of the Indebtedness in favor of Lender, any waiver or forbearance on the part of Lender shall be binding upon Lender only if the forbearance is in writing.

**LENDER'S EXPENDITURES.** Grantor recognizes and agrees that Lender may incur certain expenses in connection with Lender's exercise of rights under this Pledge. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Pledge or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Pledge or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, encumbrances and other claims, at any time levied or placed on the Collateral or

15018462 & 15018463

the Property and paying all costs for insuring, maintaining and preserving the Property, including without limitation, the purchase of insurance protecting only Lender's interest in the Property. Lender may further take such other action or actions and incur such additional expenditures as Lender may deem to be necessary and proper to cure or rectify any actions or inactions on Grantor's part as may be required under this Pledge. Nothing under this Pledge or otherwise shall obligate Lender to take any such actions or to incur any such additional expenditures on Grantor's behalf, or as making Lender in any way responsible or liable for any loss, damage, or injury to the Property, to Grantor, or to any other person or persons, resulting from Lender's election not to take such actions or to incur such additional expenses. In addition, Lender's election to take any such actions or to incur such additional expenditures shall not constitute a waiver or forbearance by Lender of any Event of Default under this Pledge. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note or other notes then constituting the Indebtedness and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Indebtedness; or (C) be treated as a balloon payment which will be due and payable at the maturity of a specific note constituting part of the Indebtedness. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Pledge:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Pledge or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Pledge to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Pledge or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Pledge or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Pledge or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings,

15018462 & 15018463

whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Leases and Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Collateral Damage or Loss.** The Collateral is lost, stolen, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Indebtedness.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Pledge within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Lender's Right to Accelerate.** Should one or more Event of Default occur or exist under this Pledge, as provided above, Lender shall have the right, at its sole option, to accelerate the maturity of and to declare any and all Indebtedness then owed to Lender to be immediately due and payable. Lender shall have the further right, again at its sole option, to exercise and/or pursue any of the rights and remedies granted to Lender under this Pledge or otherwise.

**Specific Performance.** Lender may, in addition to or in lieu of the foregoing remedies, in Lender's sole discretion, commence an appropriate action against Grantor seeking specific performance of any covenant contained in this Pledge or in aid of the execution or enforcement of any power in this Pledge granted.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Pledge or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Pledge, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Pledge or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Lender's Right Before or After Default to Proceeds and Payments.** Lender shall have the

15018462 & 15018463

additional right, at any time and for any reason, whether or not an Event of Default exists under this Pledge, to directly collect and receive the benefit of all Collateral obligations and all proceeds and/or payments assigned to Lender under this Pledge, as such amounts and/or obligations become due and payable. In order to permit the foregoing, Grantor unconditionally agrees to deliver to Lender, immediately following demand, any and all records and other documentation, in the form requested by Lender, with regard to the Collateral. Grantor further unconditionally agrees that Lender shall have the right to notify any individual lessee, sublessee and/or obligor under the Lease to pay all such rents, proceeds and/or payments directly to Lender at an address to be designated by Lender and to do any and all other things as Lender may deem necessary and proper, within its sole discretion, to carry out the terms and intent of this Pledge. Lender shall have the further right, where appropriate and within Lender's sole discretion, to file suit, either in its own name or in the name of Grantor, to enforce any obligations and/or to collect any and all such proceeds and payments that may now and in future be due and owing under the Collateral. Grantor agrees that Lender may compromise or take such other actions, either in Grantor's name or in the name of Lender, as Lender may deem appropriate within its sole judgment, with regard to collection and payment of the same, without affecting the liability of Grantor under this Pledge or under the Indebtedness secured hereby.

In order to further permit the foregoing, Lender shall have the additional irrevocable right, coupled with an interest, to: (1) remove any and all of Grantor's documents, files and records related or pertaining to the Collateral from any premises where the same shall then be located; (2) at Grantor's sole cost and expense, use such of Grantor's personnel, supplies and space at Grantor's place or places of business as may be necessary, within Lender's sole discretion, to properly administer the Collateral and/or to handle collections thereon; (3) receive, open and dispose of all mail addressed to Grantor pertaining to any of the Collateral; (4) notify the postal authorities to change the address and delivery of mail addressed to Grantor pertaining to any of the Collateral, to such address as Lender may designate; (5) endorse Grantor's name on any and all notes, acceptances, checks, drafts, money orders or other evidence of payment of the Collateral that may come into Lender's possession, and to deposit or otherwise collect the same, applying such funds to the unpaid balance of Indebtedness in the manner provided below; (6) prepare and mail invoices relating to the Collateral; (7) send verifications of the Property to the lessees, sublessees and/or obligors thereunder; and (8) execute in Grantor's name affidavits and/or notices with regard to any lien rights available to Grantor under such the Collateral.

**Lender's Receipt of Rents, Proceeds and Payments.** If Grantor receives any rents, proceeds or payments assigned under this Pledge and deposits such amounts in one or more of Grantor's deposit accounts, no matter where located, Lender shall have the additional right following default under this Pledge to attach any deposit accounts in which such amounts were deposited, whether or not such amounts were commingled with Grantor's other funds or whether or not those amounts then remain on deposit in such account(s). To this end, Grantor additionally grants Lender a continuing security interest in any and all deposit accounts that Grantor may now or in the future maintain in any financial institutions, as well as money market accounts with other types of entities, and agrees to execute any additional documentation required to perfect Lender's security interest in such deposit accounts.

This right is in addition to Lender's statutory right pursuant to La. R.S. § 6:316 to offset against the Indebtedness funds in any deposit account(s) that Grantor maintains with Lender.

**Application of Rents, Proceeds and Payments.** Any and all rents, amounts, proceeds and/or other payments that Lender receives and collects as provided hereunder shall be applied first to reimburse Lender for costs of collecting the same (including, but not limited to, attorneys' fees incurred by Lender), with the balance being applied to principal, interest, costs, expenses, attorneys' fees and other fees and charges under the Indebtedness in such order and with such preferences and priorities as Lender shall determine within its sole discretion. Any remaining amounts shall be returned to Grantor as its interests may appear.

15018462 & 15018463

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Pledge:

**Acceptance.** This Pledge is accepted by Lender in the State of Louisiana.

**Amendments.** No amendment, modification, consent or waiver of any provision of this Pledge, and no consent to any departure by Grantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Caption Headings.** Caption headings in this Pledge are for convenience purposes only and are not to be used to interpret or define the provisions of this Pledge.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. (c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Merger.** There shall be no merger of the interest or estate created by this Pledge with any other interest or estate in the Collateral at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Pledge in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Pledge as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Pledge are for convenience purposes only. They are not to be used to interpret or define the provisions of this Pledge.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Pledge unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Pledge shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Pledge. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Pledge, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** To give Grantor any notice required under this Pledge, Lender may hand deliver or mail the notice to Grantor at Grantor's last address in Lender's records. If there is more than one Grantor under this Pledge, notice to a single Grantor shall be considered as notice to all Grantors. To give Lender any notice under this Pledge, Grantor (or any Grantor) shall mail the notice to Lender by registered or certified mail at the address specified in this Pledge, or at any other address that Lender may have given to Grantor (or any Grantor) by written notice as provided in this section. All notices required or permitted under this Pledge must be in writing

15018462 & 15018463

and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail as provided herein.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Pledge are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If any provision of this Pledge is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Pledge shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Pledge shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Pledge, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound; Solidary Liability.** Subject to any limitations set forth herein on transfer of the Collateral, this Pledge shall be binding upon and inure to the benefit of the parties, and their successors and assigns. In the event that there is more than one Grantor under this Pledge, all of the agreements and obligations made and/or incurred by any Grantor under this Pledge shall be on a "solidary" or "joint and several" basis.

**Waive Jury.** All parties to this Pledge hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Louisiana as to all Indebtedness secured by this Pledge.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Pledge. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require:

**Borrower.** The word "Borrower" means PARK CAPITAL ACQ LLC.

**Collateral.** The word "Collateral" means all of Grantor's present and future rights, title, interest and remedies in, to and under Leases and Rents of the Property, as described in the "COLLATERAL DESCRIPTION" above.

**Event of Default.** The words "Event of Default" mean any event of default described in either the "DEFAULT" or "DEFAULT UNDER GRANTOR'S OBLIGATIONS" sections of this Pledge.

**Grantor.** The word "Grantor" means PARK CAPITAL ACQ LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Pledge, together with interest on such amounts as provided in this Pledge. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Pledge. Notwithstanding any other provision of this

15018462 & 15018463

**Pledge**, the maximum amount of Indebtedness secured by this Pledge is limited to $50,000,000.00.

**Lease.** The word "Lease" means all of Grantor's present and future rights, title and interest in, to and under the leases described in the "Collateral Description" section of this Pledge, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived from such leases, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

**Leases and Rents.** The words "Leases and Rents" mean all of Grantor's present and future rights, title and interest in, to and under the leases described in the "Collateral Description" section of this Pledge, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived from such leases, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

**Lender.** The word "Lender" means Celtic Bank Corporation, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means the promissory notes dated December 30, 2021, in the original principal amounts of $5,000,000.00 (15018462) & $1,765,000.00 (15018463) from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Pledge.** The word "Pledge" means this PLEDGE OF LEASES AND RENTS, as this PLEDGE OF LEASES AND RENTS may be amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this PLEDGE OF LEASES AND RENTS from time to time.

**Property.** The word "Property" means the immovable (real) property subject to the Lease, as described in the "COLLATERAL DESCRIPTION" section of this Pledge.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

15018462 & 15018463

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS PLEDGE, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS PLEDGE TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON DECEMBER 30, 2021.

GRANTOR:

PARK CAPITAL ACQ LLC

By: _____
Abraham Bodek, Manager of PARK CAPITAL ACQ LLC

15018462 & 15018463

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF NJ  }
County of  } SS.
PARISH OF Ocea  }

BE IT KNOWN, that on this  30  day of  Dec  , 2021 ;

BEFORE ME, a Notary Public,

PERSONALLY CAME AND APPEARED:

Abraham Bodek, Manager of PARK CAPITAL ACQ LLC, a partner or designated agent of PARK CAPITAL ACQ LLC, who, being duly sworn, did say and acknowledge that he or she executed the foregoing Pledge on behalf of said limited liability company as its free act and deed.

GRANTOR:

PARK CAPITAL ACQ LLC

By: _____
Abraham Bodek, Manager of PARK CAPITAL ACQ LLC

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said Parish and State the date and year last above written.

Sworn   to   and   subscribed   before   me   this   30   _____   day   of
_____   , 2021 .

_____
Notary Public
LA Bar/Notary ID No. _____

LEAH M. SPITZ
NOTARY PUBLIC
STATE OF NEW JERSEY
COMMISSION EXPIRES 04/01/2026

15018462 & 15018463

## EXHIBIT "A"

### Legal Description of Land

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

## EXTRACT OF MINUTES
## PARK CAPITAL ACQ, LLC

BE IT RESOLVED, that the sole Members and Manager of PARK CAPITAL ACQ, LLC, a Delaware limited liability company (the "Company") acting in such capacity, hereby adopt the following, to-wit:

WHEREAS, the Company would like to purchase certain immovable property more particularly described on Exhibit "A" attached hereto (the "Property");

BE IT RESOLVED that Abraham Bodek, Manager (the "Authorized Representative"), in the name of and on behalf of the Company, is authorized and empowered to purchase, buy, and acquire the Property upon such terms and conditions as the Authorized Representative may deem fit and proper;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized and empowered for and on behalf of and in the name of the Company to do all of the following relating to the Property, to-wit: (i) to negotiate for a loan or loans with any financial institutions and to borrow such sums of money to be repaid at such times and to bear such interest as the Authorized Representative may, in his/her sole discretion, deem fit and proper; (ii) to make, sign and execute negotiable promissory notes, and any other obligations, in the name of the Company; (iii) to mortgage and/or otherwise encumber any and all of the Property to secure any loan or loans, and/or any and all other obligations of the Company with such acts of mortgage to include any terms and conditions deemed appropriate in the sole discretion of the Authorized Representative (including but not limited to all of the usual and customary clauses contained in mortgage and/or security instruments in Louisiana, including a confession of judgment, consent to executory process, waiver of appraisement, and the pact de non alienando); and (iv) to file or allow the filing of UCC-1s and other UCC Financing Statements related thereto and to do any other acts and sign any and all documents and instruments as the Authorized Representative may deem necessary or appropriate in order to carry out the purposes of these resolutions, including execution of title insurance seller/owner affidavits, and closing/settlement statements;

BE IT FURTHER RESOLVED that the Authorized Representative is hereby authorized in the name of and on behalf of the Company to take such further actions and to do all things that may appear in his/her discretion to be necessary, advisable or appropriate to give effect to the intent of these resolutions and to accomplish the transactions contemplated by these resolutions; and

BE IT FURTHER RESOLVED that all actions heretofore taken by or at the discretion of Authorized Representative in connection with the transactions that are the subject of these resolutions shall be, and hereby are, approved, ratified and confirmed as the acts of the Company without any further action by the Company.

* * * * * * * * * * * * * * * * * * * *
### CERTIFICATE

I, the undersigned, Member, Manager and certifying official of PARK CAPITAL ACQ, LLC (the "Company"), hereby certify that (i) the foregoing resolutions were adopted by the unanimous consent of the Members and Manager of the Company, (ii) the foregoing resolutions are legally effective to bind the Company and are not in conflict with the Articles of Organization or any operating agreements; and (iii) the above resolutions remain in full force and effect.

THUS DONE AND SIGNED on this 3 day of January, 2022, in Ocean

PARK CAPITAL ACQ, LLC

Abraham Bodek
Member/Manager/Certifying Official

Goldie M Senderovits
NOTARY PUBLIC
State of New Jersey
ID # 50090701
My Commission Expires 9/20/2023

NOTARY PUBLIC

## EXHIBIT "A"

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

# Recordation Certificate

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**First MORTGAGOR**
PARK CAPITAL ACQ LLC

**First MORTGAGEE**
CELTIC BANK CORPORATION

Index Type : MORTGAGES                    **File Number : 3455883**

Type of Document : UCC FINANCIAL STATEMENT

                                          **Book : 5860      Page : 368**

**Recording Pages :**       4

**Recorded Information**

On (Recorded Date) : 01/13/2022

At (Recorded Time) : 12:27:18PM



Doc ID - 034299360004

2nms
ucc & MTG

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    15331 - CELTIC BANK

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

84328105

LOUI
FIXTURE

File with: Calcasieu, LA

Doc  ---ui: 034299350003 Type: UCC
Recorded: 01/13/2022 at 12:25:22 PM
Fee Amt: $52.00 Page 1 of 3
Calcasieu Parish, LA
H. Lynn Jones II Clerk of Court

File 151800

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PARK CAPITAL ACQ LLC | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 401 N Lake Shore Drive | Lake Charles | LA | 70601 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Quality Inn and Suites lake Charles, Quality Suites Downtown Convention Center Lake Charles | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 401 N Lake Shore Drive | Lake Charles | LA | 70601 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Celtic Bank Corporation | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 268 S. State St., Ste 300 | Salt Lake City | UT | 84111 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:    6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
84328105    15018462 & 15018463

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of
Commercial Administrators (IACA)

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
PARK CAPITAL ACQ LLC

OR **9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)**                                      SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

OR **10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)**                                      SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR **11b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the | 14. This FINANCING STATEMENT:
REAL ESTATE RECORDS (if applicable)
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☒ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 | 16. Description of real estate:
(if Debtor does not have a record interest):

Exhibit A

17. MISCELLANEOUS: 84329105-LA-19  15331 - CELTIC BANK        Celtic Bank Corporation        File with: Calcasieu, LA        15018462 & 15018493

## Exhibit A:

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

## Calcasieu Parish Recording Page

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**Received From :**
LA WORKFORCE COMMISSION    (167)
P.O.BOX 94094
BATON ROUGE, LA 70804-9094

**First MORTGAGOR**
QUALITY INN

**First MORTGAGEE**
STATE OF LOUISIANA

Index Type :   MORTGAGES                    **File Number : 3348101**
Type of Document : TAX LIEN

                                              Book : 5324      Page : 157
Recording Pages :        2

**Recorded Information**

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Calcasieu Parish, Louisiana

On (Recorded Date) : 03/22/2019

At (Recorded Time) : 9:10:13AM

                                              Deputy Clerk

Doc ID - 032902420002

Return To :   LA WORKFORCE COMMISSION    (167)
P.O.BOX 94094
BATON ROUGE, LA 70804-9094

Do not Detach this Recording Page from Original Document

STATE OF LOUISIANA
LOUISIANA WORKFORCE COMMISSION
OFFICE OF UNEMPLOYMENT INSURANCE
TAX OPERATIONS
Post Office Box 44127
Baton Rouge Louisiana 70804-4127

AVA DEJOIE
SECRETARY

3/11/2019
IN REPLY REFER TO UIDA
659846-0

## NOTICE OF TAX ASSESSMENT AND LIEN

TAX PAYER QUALITY INN
SAM & MATHEW HOSPITALITY INC

| YEAR | QTR | TAX DUE | INTEREST DUE | PENALTY DUE | TOTAL DUE |
|------|-----|---------|--------------|-------------|-----------|
| 2018 | 3 | 1,082.01 | 53.72 | 283.93 | 1,419.66 |
| *The balance due does not reflect activity after 3/8/2019* | | | Total Due as of 3/31/2019 | | 1,419.66 |

TOGETHER WITH ANY ADDITIONAL UNPAID CONTRIBUTIONS, INTEREST AND PENALTY THAT MAY ACCRUE AFTER THIS FILING, AS PROVIDED BY LA. R.S. 23:1543(A), AND 1727(B) UNTIL PAID, AND ALL COSTS OF RECORDATION, ENFORCEMENT AND CANCELLATION OF THIS ASSESSMENT AND LIEN.

THE TAX, INTEREST AND PENALTY, AS SHOWN ABOVE, ARE ASSESSED AGAINST THE BELOW NAMED TAXPAYER(S) IN ACCORDANCE WITH THE PROVISIONS OF LA. R.S. 23:1722-1726, THIS DOCUMENT IS RECORDED IN ACCORDANCE WITH THE PROVISIONS OF LA, R.S. 23:1727

BATON ROUGE, LOUISIANA, ON THIS DAY, MARCH 11, 2019

80000025

CLERK OF COURT:
RECORDER OF MORTGAGES
(337) 437-3550

PARISHES:   019

UI Deputy Assistant Secretary
Louisiana Workforce Commission
Office of Unemployment Insurance

*65984803/11/2019*

00000000000659846000000
File Number: 3348101   Page 2 of 2

T187CT (REV 03/2019)

**Calcasieu Parish Recordir** File Number: 3475017   Page 1 of 5

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3560

Received From :
ERECORDED-SIMPLIFILE (1825)

**First MORTGAGOR**
QUALITY INN

**First MORTGAGEE**
PATRIOT GENERAL CONTRACTING LLC

Index Type :   MORTGAGES                         File Number : 3475017

Type of Document : STATEMENT OF CLAIM AND
PRIVILEGE                                        Book : 5953        Page : 221

Recording Pages :        5

**Recorded Information**

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Calcasieu Parish, Louisiana.

On (Recorded Date) : 06/27/2022

At (Recorded Time) : 1:54:37PM

Clerk of Court

Return To :   ERECORDED-SIMPLIFILE (1825)

Do not Detach this Recording Page from Original Document

## STATEMENT OF CLAIM AND PRIVILEGE

ID: 8743562

On the 27ᵗʰ day of June ____, 20 22, COMES AND APPEARS:

Patriot General Contracting LLC, formed under the laws of the State of Texas with its primary offices located at 32141 Giant Oak, Bulverde, Texas 78163 and who is herein represented by its duly authorized agent for the purposes of signing and filing this Statement of Claim and Privilege, Levelset, a Delaware Corporation with offices located at 1121 Josephine St., New Orleans, LA 70130.

Hereinafter called APPEARER, who declares that:

The OWNER
Quality Inn
401 North Lakeshore Drive
Lake Charles, Louisiana 70601

The HIRING PARTY (the party who hired
APPEARER):
Quality Inn
401 North Lakeshore Drive
Lake Charles, Louisiana 70601

PARK CAPITAL ACQ LLC
426 HERBERTSVILE RD FLOOR 3
Brick, New Jersey 08724

Hereinafter collectively DEBTOR, is justly, truly and legally indebted unto APPEARER in the sum of $7,760.61 DOLLARS;

The account represents equipment, work, labor, services and/or material delivered to the below-described property, these items are referred to herein as the SERVICES and described:

Remove and replace broken missing or damaged exterior soffit and fascia. Purchase and install new gutter downspouts

These SERVICES performed and provided by APPEARER on the property are described as follows:

These certain pieces of ground, together with all buildings, component parts, and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, located in the Parish of Calcasieu Parish, State of Louisiana, at the following address:

401 North Lakeshore Drive
Lake Charles, Louisiana 70601

Legally described as:
@310908-0113-29 000A01 0000 @310908-0113-29 000B01 0000 @310908-0113-29 000A02 0000 @310908-0113-29 000B02 0000 @310908-0113-29 X00A2E 0000 BEG ON S/L LAWRENCE ST AT CENTER OF ABNDND FRONT ST, TH W ALONG S/L LAWRENCE ST 240.3 FT, S 4 DEGS E 401.34 FT

TO PT ON N/L PINE ST, E 209.9 FT TO CENTER ABNDND FRONT ST, N 400 FT ALONG CENTER
ABNDND FRONT ST TO BEG IMPS 99/CMS (111 ROOMS) REF1-SOUTHERN PACIFIC CO TEXAS
AND LA LINES MAIN LINE B 1658 P 790-81 REF2-ASSESSED 3LU-81 REF3-B 1740 P 614-83 REF4-
W-K-N REAL ESTATE INC CH BK 145 P 446, B 2314 P 832, B 2337 P 488 REF5-W-K-N REAL ESTATE
INC CH BK 145 P 446-95 REF6-POWELL LAND DEVELOPMENT COMPANY INC B 2599 P 222-96
Parcel# 00945994

IMPORTANT INFORMATION ON THE FOLLOWING PAGE

This statement is made for the purpose of preserving the lien and privilege granted by law to the
**APPEARER** on the improvements and property above described.

The debt, plus costs of filing this statement, is due, owing, and unpaid, and all just credits have been
allowed.

**APPEARER** hereby delivers to the Clerk of Court/Recorder of Mortgages in and for the Parish of
Calcasieu Parish, State of Louisiana, this claim for a lien and privilege and requests that the same be
recorded in accordance with the provisions of Louisiana Revised Statutes 9:4801, et seq.

Witnesses:

_____
Sean Garey

_____
Charles Henson

_____
APPEARER
Signed by: Michael Mann
Authorized and disclosed Agent of Appearer

**Patriot General Contracting LLC**
32141 giant oak
Bulverde, TX  78163 US
+1 8616748812
info@patriotgc.org

Exhibit A



## INVOICE

| BILL TO | | INVOICE | 274 |
| Bradley | | DATE | 04/12/2022 |
| | | TERMS | Due on receipt |
| | | DUE DATE | 04/12/2022 |

| SERVICE | DESCRIPTION | QTY | RATE | AMOUNT |
|---------|-------------|-----|------|--------|
| service | Purchase and install missing and damaged fascia and soffit to match existing. Fix existing soffit to original state | 1 | 3,471.00 | 3,471.00T |
| service | Purchase and install missing rain gutter and 5 downspouts around exterior of building | 1 | 2,120.00 | 2,120.00T |
| service | 60' articulating manlift | 1 | 1,645.00 | 1,645.00T |

| | SUBTOTAL | 7,236.00 |
|--|----------|----------|
| | TAX | 524.61 |
| | TOTAL | 7,760.61 |
| | BALANCE DUE | **$7,760.61** |

**Calcasieu Parish Recordir**

H. Lynn Jones II
Clerk of Court
P.O. Box 1030
Lake Charles, LA 70602
(337) 437-3550

**Received From :**
ERECORDED-SIMPLIFILE (1825)

**First MORTGAGOR**
PARK CAPITAL ACQ LLC

**First MORTGAGEE**
D & D CUSTOM SERVICES LLC

Index Type :     MORTGAGES                         File Number : 3490928

Type of Document : STATEMENT OF CLAIM AND
PRIVILEGE                                    Book : 6016       Page : 661

Recording Pages :        5

**Recorded Information**

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Calcasieu Parish, Louisiana.

On (Recorded Date) : 11/18/2022

At (Recorded Time) : 11:19:01AM

H. Lynn Jones II
Clerk of Court

Return To :     ERECORDED-SIMPLIFILE (1825)

Do not Detach this Recording Page from Original Document

STATE OF LOUISIANA

PARISH OF CALCASIEU

SWORN STATEMENT OF CLAIM AND PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified as such in

and for the aforesaid County and State, personally came and appeared:

D & D CUSTOM SERVICES, LLC, a Louisiana Limited Liability
Company, herein represented by Dean Domingue, Member, duly
authorized herein, whose permanent mailing address is 7120 Curtis
Lane, Lake Charles, LA 70607;

who, after being first duly sworn, did depose and declare that:

I.    PARK CAPITAL ACQ, LLC, as owner, is justly, truly, and legally indebted unto

D & D CUSTOM SERVICES, LLC, in the full sum of $7,500.00, as will appear

in the itemized statement of account attached hereto as Exhibit A, along with any

interest, attorney fees, and the cost of filing this Notice of Claim and Privilege, as

contractor and owner, under the Private Works Act (LSA R.S. 9:4801 et seq);

II.   D & D CUSTOM SERVICES, LLC provided labor, material, supervision, and

related services for the installation of infrastructure, utilities, and the construction of

the sub-base of interior roads pursuant to a Contract Agreement between D & D

CUSTOM SERVICES, LLC, and PARK CAPITAL ACQ, LLC;

III.  Said labor was performed, and materials provided, on the immovable property owned

by PARK CAPITAL ACQ, LLC, more fully described as follows:

That certain parcel of land, together with all buildings and
improvements thereon, and also furniture, fixtures and equipment
owned by Vendor therein, and all rights, ways, privileges, servitudes,
appurtenances, and advantages thereunto belonging or in anywise
appertaining, situated in the City of Lake Charles, Parish of
Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the
center of the abandoned "Front Street"; thence North eighty-nine
degrees fifty-three minutes West along the South line of Lawrence
Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron
rod; thence South four degrees forty minutes East along a line parallel
to and 97 feet Easterly at right angles from the centerline of North
Lakeshore Drive (or the centerline of State Project 3-30-06) for a
distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North
line of Pine Street; thence South eighty-nine degrees fifty-two
minutes East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the

center of the abandoned "Front Street"; thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the Point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated April 2, 1997, revised April 21,1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

IV.    That this Affidavit and Sworn Statement is made for purpose of preserving the claim

and privilege granted by the private works act to **D & D CUSTOM SERVICES,**

**LLC**, with reference to the hereinabove described project, with full reservation of its

rights to assert its claim for personal liability for the aforesaid sum against the above

project manager and owner;

V.    That the full sum of **$7,500.00**, together with interest, attorney's fees and costs,

remains due, owing, and unpaid, after the allowance of all credits due.

D & D Custom Services, LLC

Beau Domingue, Managing Member

SWORN TO AND SUBSCRIBED before me, the undersigned Notary, and in the presence

of the undersigned witnesses, this __ day of November, 2022, at Lake Charles, Calcasieu Parish,

Louisiana.

JAMES F. DeROSIER (#27342)
Notary Public

STATEMENT OF ACCOUNT
UPDATED 11/17/2022

Re: Quality Suites

Statement of Monies due D & D CUSTOM SERVICES, LLC

25% Progress Payment on $30,000          $7,500

Total Amount Due                         $7,500

File Number: 3490926   Page 5 of 5



**D & D CUSTOM SERVICES LLC**
7120 CURTIS LANE
LAKE CHARLES, LA 70607

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 8/5/2022 | 7430 |

**BILL TO:**

QULITY SUITES
401 LAKE SHORE DRIVE
LAKE CHARLES, LA 70601

| P.O. NUMBER | TERMS | PROJECT |
|-------------|-------|---------|
| | Due on receipt | |

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|----------|-------------|------|--------|
| 1 | FIRST DRAW ON HOTEL RENO ON SIDE COVER AT FRONT DOOR | 7,500.00 | 7,500.00 |



Thank you for your business.

| | TOTAL | $7,500.00 |
|--|-------|-----------|



# BEST SUITES LAKE CHARLES, L.L.C.

A TRACT OF LAND LOCATED IN BLOCK 29 OF THE THOMAS BILBO AND ANN LAWRENCE SUBDIVISION IN THE CITY OF LAKE CHARLES, LOUISIANA AND A PORTION OF ABANDONED "FRONT STREET" ON THE EAST SIDE OF SAID BLOCK 29. MORE PARTICULARLY DESCRIBED AS:

BEGINNING AT A POINT ON THE SOUTH LINE OF LAWRENCE STREET AT THE CENTER OF THE ABANDONED "FRONT STREET"; THENCE NORTH 89°33' WEST ALONG THE SOUTH LINE OF LAWRENCE STREET FOR A DISTANCE OF 240.3 FEET TO A 1" IRON ROD; THENCE SOUTH 4'40' EAST ALONG A LINE PARALLEL TO AND 97 FEET EASTERLY AT RIGHT ANGLES FROM THE CENTER LINE OF NORTH LAKESHORE DRIVE (or the centerline of STATE PROJECT 3-30-06) FOR A DISTANCE OF 401.34 FEET TO A POINT ON THE NORTH LINE OF PINE STREET; THENCE SOUTH 89°52' EAST 209.9 FEET TO THE CENTER OF THE ABANDONED "FRONT STREET"; THENCE NORTH 0'20' WEST 400 FEET ALONG THE CENTERLINE OF THE ABANDONED "FRONT STREET" TO THE POINT OF BEGINNING.

SCALE: 1" = 20'

APRIL 2, 1997
REVISED: APRIL 21, 1997

SURVEYS

**Calcasieu Parish - Tax Notice Inquiry**
**2/25/2025 2:53:38 AM**

**Tax Notice#** 334255

**Tax Year** 2024

**Taxpayer**

PARK CAPITAL ACQ LLC
*** HERBERTSVILE RD FLOOR *
BRICK NJ *****-****

---

| Taxes | Interest | Cost | Other | Paid | Balance |
|-------|----------|------|-------|------|---------|
| 56,785.63 | 0.00 | 0.00 | 0.00 | 56,785.63 | 0.00 |

---

## Legal

@310908-0113-29 000A01 0000
@310908-0113-29 000B01 0000
@310908-0113-29 000A02 0000
@310908-0113-29 000B02 0000
@310908-0113-29 X00A2E 0000
BEG ON S/L LAWRENCE ST AT CENTER OF ABNDND
FRONT ST, TH W ALONG S/L LAWRENCE ST 240.3 FT, S
4 DEGS E
401.34 FT TO PT ON N/L PINE ST, E 209.9 FT TO
CENTER ABNDND FRONT ST, N 400 FT ALONG CENTER
ABNDND
FRONT ST TO BEG
IMPS 99/CMS (111 ROOMS)
REF1-SOUTHERN PACIFIC CO TEXAS AND LA LINES
MAIN LINE B 1658 P 790-81
REF2-ASSESSED 3LU-81
REF3-B 1740 P 614-83
REF4-W-K-N REAL ESTATE INC CH BK 145 P 446, B 2314
P 832, B 2337 P 488
REF5-W-K-N REAL ESTATE INC CH BK 145 P 446-95
REF6-POWELL LAND DEVELOPMENT COMPANY INC B
2599 P 222-96

---

## Parcels

| Parcel# | Address | % Tax |
|---------|---------|-------|
| 00945994 | 401 LAKESHORE DR | 100.0000 |

## Items

| Class | Value | Units | Homestead |
|-------|-------|-------|-----------|
| 005 COML LOT(S) | 100,650 | 1.00 | 0 |
| 080 HOTEL/MOTEL/B&B | 397,120 | 1.00 | 0 |



3925 N. I-10  Unit 109P
Favrot and Shane Building
Metairie, LA 70002
Phone: 504-375-3611
info@madisontitleofLA.com
www.madisontitleoflouisiana.com

February 25, 2025

Mordy Gross, Esq.
Law Offices of Mordy Gross, LLP
221 Pine Street
Lakewood, NJ 08701
Email: mordygross@gmail.com

Re:  TITLE NO.    MTALA-201530
               Park Capital ACQ LLC, a Louisiana limited liability company

Certified to:  Mordy Gross, Esq.

We have searched the land records in Calcasieu County.  This report is made on the express assumption that the last prior grantee had good record title to the premises on the date of commencement of this search.  This search does not evaluate the effect of any of the documents listed in this search or the validity thereof; nor does it show mortgages or other liens, which have been canceled or released as to the premises.

This search has been made on the express contractual condition that it be for the use and benefit of the party named above based upon information supplied by the applicant as to the location and identification of the premises in question.  The liability of this Company for this search is limited to $1,000.00. If higher liability limits are desired, title insurance may be ordered.  No liability is assumed for items not indexed or mis-indexed, nor for matters which would be disclosed by an accurate survey or inspection of the premises.  This report does not represent either a commitment to insure title, or an opinion as to the marketability of title to the premises.

**Search from: January 6, 2022 to: February 18, 2025**

**No representation is made as to the status of title prior to the above date.**

**PREMISES:**
401 N Lakeshore Drive, Parcel No. 00945994 in the City of Lake Charles, Parish of Calcasieu, State of Louisiana.

See Legal Description attached.

**LAST DEED FOUND OF RECORD:**
Park Capital ACQ LLC, a Louisiana limited liability company by Cash Sale dated January 4, 2022 and recorded on January 6, 2022 in Book 4484 Page 709, as File No. 3454971.

**SUBJECT TO:**
1.      Collateral Mortgage made by Park Capital ACQ LLC in favor of Celtic Bank Corporation in the original principal amount of $6,765,000.00 dated December 30, 2021 and recorded on January 6, 2022 in the Calcasieu Parish Records in Book 5855 Page 592, as File No. 3454972.

201530/22

TITLE SEARCH REPORT
MTALA-201530

2. Pledge of Leases and Rents made by Park Capital ACQ LLC in favor of Celtic Bank Corporation dated December 30, 2021 and recorded on January 6, 2022 in the Calcasieu Parish Records in Book 5855 Page 613, as File No. 3454973.

3. Financing Statement between Park Capital ACQ LLC; (debtor), and Celtic Bank Corporation; (secured party) recorded on January 13, 2022 in the Calcasieu Parish Records in Book 5860 Page 368, as File No. 3455883.

4. Notice of Tax Lien Assessment and Lien in favor of State of Louisiana Workforce Commission Office of Unemployment Insurance Tax Operations vs. Quality Inn and Sam & Mathew Hospitality Inc in the amount of $1,419.66 plus contributions, interest and penalty, recorded on March 22, 2019 in Book 5324 Page 157 as File No. 3348101.

5. Statement of Claim and Privilege in favor of Patriot General Contracting LLC vs. Park Capital ACQ LLC and Quality Inn in the amount of $7,760.61 recorded on June 27, 2022 in Book 5953 Page 221 as File No. 3475017.

6. Sworn Statement of Claim and Privilege in favor of D&D Custom Services, LLC vs. Park Capital ACQ, LLC in the amount of $7,500.00 recorded on November 18, 2022 in Book 6016 Page 861.

NOTE: Taxes for the year 2024 are paid in the amount of $56,785.63.

Chaya M Ceitlin

Chaya Ceitlin

File No. MTALA-201530

## LEGAL DESCRIPTION

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Lake Charles, Parish of Calcasieu, State of Louisiana.

That certain parcel of land, together with all buildings and improvements thereon, and also furniture, fixtures and equipment owned by Vendor therein, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the City of Lake Charles, Parish of Calcasieu, State of Louisiana, more particularly described as follows:

Beginning at a point on the South line of Lawrence Street at the center of the abandoned "Front Street"; thence North eighty-nine degrees fifty-three minutes West along the South line of Lawrence Street for a distance of 240.3 feet (N89°53' W 240.3 ft.) to a 1" iron rod; thence South four degrees forty minutes East along a line parallel to and 97 feet Easterly at right angles from the centerline of North Lakeshore Drive (or the centerline of State Project 3-30-06) for a distance of 401.34 feet (S 04°40' E 401.34 ft.) to a point on the North line of Pine Street; thence South eighty-nine degrees fifty-two feet East for a distance of 209.9 feet (S 89°52' E 209.9 ft.) to the center of the abandoned "Front Street", thence North zero degrees twenty minutes West 400 feet (N 00°20' W 400 ft.) along the centerline of the abandoned "Front Street" to the point of Beginning, as per that certain plat of survey prepared by George F. Webb, Jr. R.L.S., dated. April 2, 1997, revised April 21, 1997, a copy of which is attached to instrument recorded under Registry Number 2342513 in Conveyance Book 2599 at Page 222.

NOTE FOR INFORMATION:  Being Parcel No(s). 00945994, of the City of Lake Charles, Parish of Calcasieu.

**Madison Title of Louisiana, LLC**
**3925 N. I-10  Unit 109P, Favrot and Shane Building, Metairie, LA 70002**
**Telephone: 504-375-3611  Fax:**

201530/22